(No. 33903.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY MORRIS, Plaintiff in Error.

*Opinion filed September 25, 1956—Rehearing denied Nov 19, 1956.*

Henry Morris, *pro se.*

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (Fred G. Leach, Edwin A. Strugala, Irwin D. Bloch, John T. Gallagher, Rudolph L. Janega, and William L. Carlin, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Plaintiff in error Henry Morris, and one Fisher Brown, were indicted in the criminal court of Cook County for the crime of murder. Plaintiff in error, who was tried separately before a jury, was found guilty. He was sentenced to the penitentiary for a term of 199 years, and prosecutes this writ of error to review the proceedings.

The record shows that on August 28, 1948, at about 10 P.M., Earl Vappie, an operator of a Chicago Motor Coach bus, was shot and killed while driving the bus north along South Park Avenue in Chicago. There were four eye-witnesses to the crime, exclusive of Fisher Brown. Norfleet Vappie, the brother of the deceased bus driver, was seated in the bus on the long seat right behind the driver. He testified that he observed two men get on the bus. One of these men, whom Vappie identified as the killer, walked immediately to the back of the bus and took a seat. He described this man as being a dark-colored negro, dressed in a brown suit, black T shirt, and a hat

which was pulled down all the way around. He also stated that this man wore dark glasses and had a patch of adhesive tape on his cheek. Some time after this man went to the back of the bus he walked up to the front, leaned over the bus driver and had some conversation with him, which the witness was unable to hear. At that time he heard a gun go off and saw his brother slump over the wheel. He saw the killer leave the bus by the front door. Three other passengers—namely Leatrice Harris, who was seated between Earl Vappie and the driver; Briggs Connell, seated for a time beside the defendant, and Robert Steward, seated near the rear door of the bus—testified substantially the same.

Defendant was arrested at about four o'clock in the morning following the night of the crime. At that time he was in an automobile with three other men; and a gun, later identified as the murder weapon, was found under the front seat. All four men were taken to the police station, booked on charges of disorderly conduct, and admitted to bail. When their case came on for trial the charges were dismissed. Defendant was again arrested on October 4, when he was placed in a line-up and viewed by Connell, Steward and Norfleet Vappie. Steward pointed out defendant as the man who shot the bus driver. Vappie and Connell told the police merely that defendant resembled the killer.

Fisher Brown testified that on August 28 defendant visited him at his home. At that time Brown said he had a gun, which he displayed to defendant. The latter obtained possession of the gun from Brown, refused to give it back, and said he had to see a fellow who owed him some money. Defendant forced Brown to go with him and they walked a short distance when they boarded the bus operated by deceased. When Brown saw the defendant walk toward the front of the bus he was afraid there would be trouble so he started to crawl out of the window

and when the gun went off, he jumped out the window and ran down the street. Defendant pursued him but Brown dashed into a near-by housing project and lost defendant. Brown then went down to the police station to report the theft of his gun. Since he did not know the gun's registered number, the desk sergeant told him to come back the following day with that information, which he did. Brown was arrested on October 4, and taken to the police station where he was asked to look through a crack in a door and see if he could identify the man in the other room. He identified defendant as the man who took his gun and shot the bus driver.

Testimony concerning an oral confession was given by Vappie, Connell, Steward, an Assistant State's Attorney and several police officers, who all testified that at the time of defendant's third arrest on October 4, immediately following the show-up, defendant orally admitted that he had taken the gun from Brown and had shot the bus driver. The witnesses all testified that defendant refused to give a written statement at that time saying that he was not going to sign himself to the electric chair.

The defense interposed by defendant was an alibi and a complete denial of any involvement in the crime. He denied making any oral confession. He testified that on the day of the crime he was on a picnic with his wife and several other persons. They did not leave the picnic area until around 10:00 P.M. when they boarded a street car which took them back to the home of defendant's wife's parents. They talked there for awhile and went inside and ate and left the house between 10:30 and 11:00 P.M. Defendant then went to a service station where he remained until about 3:00 in the morning. At about that time a car drove into the service station. The men in the car asked if defendant could direct them to the Flamingo Lounge and defendant said he could. While they were driving the car, they were arrested by police as previously stated. Defend-

ant's testimony was corroborated by that of his wife and one of the other people who were on the picnic. Defendant's wife testified that the other persons were unable to appear as witnesses for the reason that they would lose their jobs if they took time off from work.

The principal errors assigned by defendant are that the State failed to establish his guilt beyond a reasonable doubt, and that the court improperly instructed the jury. An instruction concerning the oral confession told the jury that "There has been admitted in evidence in this case a confession. It is for the jury to determine from all the facts and circumstances in the case what weight or credit shall be given by them to this confession, and shall be considered by the jury with all the other evidence in the case in determining the guilt or innocence of the defendant." It is clear that the giving of this instruction was error. One of the controverted questions in the case was whether a confession had been made. Witnesses for the prosecution testified that defendant had made the statements in question. The defendant, on the other hand, denied that he had made them. The instruction, however, assumes the existence of the confession, leaving to the jury only the matter of what weight should be given to it. The question whether the confession had in fact been made by the defendant was one to be passed upon by the jury, upon a consideration of all the evidence in the case. This court has repeatedly held that where the facts are controverted and the evidence is conflicting it is error to assume such controverted facts to be true. *People* v. *Biella,* 374 Ill. 87; *People* v. *Harvey,* 286 Ill. 593; *Hellyer* v. *People,* 186 Ill. 550.

In view of the error discussed it is unnecessary to express any opinion upon the weight of the evidence, or upon other assignments of error. For the reason stated the judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*