**People of the State of Illinois, Plaintiff-Appellee, v. Thomas Gaither, Defendant-Appellant.**

Gen. No. 51,426.

First District, Fourth Division.

November 27, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon M. Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Arson. (Ill Rev Stats (1963), c 38, § 20–1.)

DEFENSE AT TRIAL
Accident.

JUDGMENT
After a jury trial, defendant was found guilty and sentenced to a term of 1 to 8 years.

POINTS RAISED ON APPEAL
(1) It was reversible error for the trial court not to conduct a hearing into the competency of the defendant.
(2) The indictment was invalid.
(3) It was error for the trial court to refuse a tendered defense instruction.
(4) The defendant was not proven guilty beyond a reasonable doubt.

EVIDENCE
*Flossie B. Gaither,* for the State.
She was the wife of defendant. On May 1, 1965, she was living at 4339 West 13th Street, Chicago. She had been separated from her husband since October 1964,

and had not seen him for approximately one month. She had leased this apartment from Shavin Real Estate and paid $90 per month rent. On the evening of April 30, 1965, she had retired to her bedroom at 10:30 p. m. At approximately 3:00 or 4:00 a. m., she was awakened by the coughing of one of her children. She left her bedroom and went to sleep with the children who were two and four years of age.

Later, in the early morning of May 1, 1965, she was awakened by a popping sound which came from the kitchen and the bedroom. She heard the front door slam. She opened the front door and saw defendant running down the stairs. The whole apartment was ablaze with fire. She put on her housecoat, grabbed her children, and fled the building while yelling a warning to the other tenants.

At the time of the incident, the defendant was staying in a mental hospital where he had voluntarily signed himself in. Defendant had told her that if he did anything, no one would do anything to him, because he was going to sign himself into the mental hospital. She had never given defendant a key to her apartment.

*Sam Sheppard*, for the State.

He was a janitor for the building at 508 South Francisco. He had known defendant for two years. On May 1, 1965, at approximately 9:30 a. m., defendant told Sheppard that he thought that he had killed his wife and two children. Defendant explained that he had been turned out of the mental hospital the evening before. He had gone to his wife's apartment, where he went up to the back porch and picked the lock. He said to Sheppard that he looked at his wife and thought of killing her and the children with a knife. Instead, he got some paper, put it in the bedroom, lit it, and watched it until it was burning well. Defendant then told Sheppard that he left and waited up the street for the fire trucks.

About 10:30 a. m., Sheppard called Leroy Harris, who had Sheppard's car, and asked him to drive defendant and Sheppard to the site of the fire. Defendant told the same story to Harris. After viewing the spot, Harris drove defendant to his sister's house, and Harris then returned to Sheppard's apartment. From there, the police were called by Harris. Defendant did not appear to have been intoxicated.

*Leroy Harris,* for the State.

He was a janitor at 29 South Kedzie. He had known defendant since 1957. On May 1, 1965, he saw defendant at the apartment of Sam Sheppard and from there drove the three of them to the address of the fire. During the trip, defendant explained to him the incidents surrounding the fire. (His testimony was substantially the same as Sheppard's in this regard.) He noticed the building where the fire had occurred and then drove back to Sheppard's apartment. Shortly after that, defendant went to his sister's apartment, and Harris called the police from Sheppard's apartment.

*Edward Reynolds,* for the State.

He was the police officer who, on May 1, 1965, located defendant in a barber shop. In the squad car, on the way to the station, defendant said he knew why he was being taken to the station. At the police station, in the presence of Reynolds and Officer Porter, defendant said, "I know why I am here." He said, ". . . you will have to prove it." He said also, "I set the fire, but prove it," and that he wished his wife had burned in the fire. Reynolds also testified that defendant started a fire with his clothes while he was incarcerated at the police station. Defendant had said, "I am going to burn this goddamned place down, like I burned the other one."

*George Wilkens,* for the State.

He was a detective in the Bomb and Arson Unit. At 4:00 p. m., on May 1, 1965, he and his partner, John

51

Kindle, went to the apartment of Flossie Gaither. From his investigation, he was able to determine that the fire had originated in the bedroom of the apartment. It had traveled into the hallway, the washroom, the kitchen, and then out the rear door which had been left slightly ajar. Heavy charring was found in the bedroom where the bed had been. When he confronted defendant, he denied that he had started the fire.

*Thomas Gaither*, defendant, on his own behalf.

He arrived at Flossie Gaither's apartment at approximately 4:30 a. m., on May 1, 1965. After trying the front door, he entered through the rear door, which was open (he had no key), and went to his wife's bedroom where he lit a cigarette and began to read a newspaper. He soon fell asleep. He was awakened later by the smell of smoke which filled the house. Without warning his wife and children, he got out of bed and ran through the rear door down the stairs to the ground level. He then thought of his wife and children and returned to the apartment. Finding no one in the apartment, he ran to a gas station on Kostner Street to call the fire department. Before reaching the service station, he saw fire trucks going to the apartment.

Later that morning, he saw Sam Sheppard, whom he told of the fire in his wife's apartment. He also told his story to Leroy Harris. (He denied the contents of the conversations as testified to by Sheppard and Harris.)

OPINION

(1) Defendant argues, first, that the evidence raised a bona fide doubt as to his sanity and that there arose a duty upon the trial court to suspend proceedings and conduct a sanity hearing under Ill Rev Stats (1963), c 38, § 104–2(b). The statute provides:

(b) If during the trial the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall conduct a

hearing to determine the defendant's competency and shall at the election of the defendant impanel a jury to determine that issue.

Thus, to justify suspension of the proceedings during the course of a trial, some fact or circumstance must present itself to the judge as a reasonable basis for doubt as to defendant's sanity. People v. DeSimone, 28 Ill2d 72, 190 NE2d 831; Brown v. People, 8 Ill2d 540, 134 NE2d 760. The type of conduct on the part of a defendant, which would require a judge to intervene for the purpose of conducting a competency hearing, may be determined by reference to the statute, which provides:

> For the purpose of this Article, "incompetent" means a person charged with an offense who is unable because of a physical or mental condition:
> (a) To understand the nature and purpose of the proceedings against him; or
> (b) To assist in his defense; . . . Ill Rev Stats (1963), c 38, § 104–1.

■ To bring himself within the terms of this statute, defendant points to several examples of his own conduct. First, at the time of the incident in question, defendant had just been released from a mental hospital. There is no evidence, however, that he had ever been declared incompetent. The testimony of Flossie Gaither was that he had signed himself into the hospital, and the testimony of Sheppard was that defendant had told him of having been turned out of the hospital on the night before the fire. Since there was no proof of insanity at the time defendant was in the mental hospital, however, we cannot now presume that he was insane, at the trial. See, generally, People v. Maynard, 347 Ill 422, 179 NE 833; People v. Burks, 80 Ill App2d 324, 224 NE2d 668.

■ Defendant also points to the dialogue with the court in chambers and to the testimony of Officer Rey-

53

nolds pertaining to defendant's conduct while in custody at the police station. (Defendant, in the lockup, had removed his shirt and jacket and set them on fire, claiming that he would burn the place down.) To support the contention that this conduct was sufficiently abnormal to raise a bona fide doubt of defendant's sanity at trial, he cites Pate v. Robinson, 383 US 375, and People v. Bender, 27 Ill2d 173, 188 NE2d 682.

While the principles declared in those cases are, of course, controlling of this court's decisions, the cases themselves do not help defendant's position, as they are distinguishable on the facts.

■ ■ Under the test established by Ill Rev Stats (1963), c 38, § 104–1, the trial court has discretion to order a competency hearing if the facts and circumstances raise a bona fide doubt as to the defendant's sanity. People v. Milani, 34 Ill2d 524, 216 NE2d 816; People v. Milligan, 28 Ill2d 203, 190 NE2d 753; People v. Baker, 26 Ill2d 484, 187 NE2d 227. Here, defendant entered a plea of not guilty, testified on his own behalf, and presented a defense. There is evidence that defendant had signed himself into a mental hospital, and there is also evidence that he had done so to escape prosecution for anticipated criminal acts. No question as to his competency was raised at the trial. The trial judge had ample opportunity to observe defendant during the course of the trial. Further, in our opinion, there was no evidence that raised a bona fide and reasonable doubt about defendant's ability to understand the nature of the proceedings against him, and to assist in his defense. The trial court did not abuse its discretion in not conducting a competency hearing.

(2) Defendant next claims that the indictment is invalid because it does not properly identify the owner of the premises. The indictment states that "Thomas Gaither committed the offense of arson in that he, by means of

fire, knowingly damaged the building of Flossie Gaither, lessee, . . . ." The testimony of Flossie Gaither revealed that she rented her apartment from Shavin. Defendant's contention of indictment insufficiency stems from the fact that Mrs. Gaither is neither owner nor lessee of the entire building, but is merely a lessee of one of eighteen apartments in the building.

 The purpose of an indictment or any formal charge is to notify the accused of the exact charge against him so that he may prepare his defense accordingly. People v. Johnson, 79 Ill App2d 226, 223 NE2d 860; People v. Addison, 75 Ill App2d 358, 220 NE2d 511; People v. Merrill, 76 Ill App2d 82, 221 NE2d 145; People v. Bonner, 37 Ill2d 553, 229 NE2d 527.

The crime of arson, Ill Rev Stats (1963), c 38, § 20–1 (a), is defined as follows:

> A person commits arson when by means of fire or explosive, he knowingly damages any building of another without his consent.

Ill Rev Stats (1963), c 38, § 20–1 states further:

> A building or property "of another" means a building or property in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property.

As holder of a leasehold interest, Mrs. Gaither possesses an interest protected by the statute, and the language of the indictment is therefore sufficient.

(3) The next contention of defendant is that it was reversible error for the trial court to refuse to give the following instruction:

> The court instructs the jury that the alleged verbal admissions made by the defendant to the witnesses must be regarded with caution.

For this proposition, defendant cites Marzen v. People, 173 Ill 43, 50 NE 249; People v. Rischo, 262 Ill 596, 105 NE 8; and People v. Christocakos, 357 Ill 599, 192 NE 677. We do not consider these cases to be in point.

It is our conclusion that the trial court was correct in refusing the tendered instruction, since it calls attention to a particular portion of the evidence. People v. Sledge, 71 Ill App2d 285, 218 NE2d 845; Geohegan v. Union El. R. Co., 266 Ill 482, 107 NE 786. Also, since defendant claimed in his testimony that he had not made admissions to the state's witnesses, that, too, presented a question of fact for the jury, whereas the refused instruction improperly assumes that defendant had made the statements and leaves to the jury only the question of their nature and the weight which should be given to them. People v. Morris, 9 Ill2d 359, 363, 137 NE2d 840. See, also, People v. Payne, 77 Ill App2d 55, 61, 221 NE2d 778; People v. Sledge, 71 Ill App2d 285, 290, 218 NE2d 845; People v. Wade, 71 Ill App2d 202, 211, 217 NE2d 239.

(4) Finally, defendant contends that he was not proven guilty beyond a reasonable doubt, the crux of his argument being that there was insufficient evidence to prove him criminally responsible for the act. Going one step farther, defendant contends that the evidence showed that the fire had been caused by accident, and that there was thus no showing that it had been the wilful or knowing act of defendant. It is our belief, however, that there was sufficient testimony, if believed, to prove defendant guilty beyond a reasonable doubt. And the matter of credibility, under these circumstances, was for the jury.

DECISION

The judgment and sentence of the Circuit Court are affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.