THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM TISLEY, Defendant-Appellant.

(No. 58402; )

First District (1st Division)—May 20, 1974.

*Rehearing denied June 10, 1974.*

James J. Doherty, Public Defender, of Chicago (Robert Gevirtz, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, William Tisley, was charged in three separate indictments with the offense of arson in connection with fires at an apartment building at 612 and 614 North Spaulding on July 9, 1971, August 6, 1971, and September 4, 1971. He was also charged with the murder of four persons who were killed in the September 4, 1971, fire. After a bench trial, he was found guilty of the August 6, 1971, arson and acquitted on the other charges.

The indictment on which he was found guilty alleged that he, "by means of fire knowingly damaged the building of Uglee Hopson, in violation of Chapter 38, Section 20—1, of the Illinois Revised Statutes 1969."

Uglee Hopson executed a contract to purchase the building at 612 and 614 North Spaulding from Roy Walker for $20,000 in April, 1971. There were nine tenants in the building, and May 1 was the first time that he collected the monthly rents. Mrs. Tisley, the mother of the defendant, paid only $90 of her $125 monthly rent. In June, Hopson again collected rents and the Tisleys failed to pay anything. Hopson gave Mrs. Tisley 5 days' notice, but she did not move out. In July, he again collected rents, and Mrs. Tisley did not pay. She moved out sometime that month.

There was a fire in the building on July 9, 1971, which started on the second floor of the building east of the Tisley apartment. On August 6, 1971, there was another fire in the building. The area burned was from the basement to the third floor. On September 4, 1971, there was a fire which rendered the building uninhabitable. Hopson testified that he was trying to get the people to move from the building, but he had given up going to the building because the people were so rough. He filed 5-day notices against the tenants and collected no rents after July. He wanted the people out of the building so that he could board it up and get it repaired.

Walker, the contract seller, showed no interest in taking the building back, and Hopson never executed any document conveying the interest back to Walker. Before the fires he made several improvements to the building including a new hot water heater and provision for garbage collection. He had fire insurance but never made a claim because he was interested in the building and not the insurance. He continued to provide garbage collection, light, water and heat.

Isaac Johnson, Sr., lived at 614 North Spaulding until July 9, 1971, on which date he saw the defendant around the building several times. The fire occurred late in the evening, and Johnson entered the building after the fire was out. He noticed that in the Tisley's apartment everything

was burned, and he testified that the steam "sort of smelled like gasoline."

Isaac Johnson, Jr., 14 years old, saw the fire coming out of the second floor. He went up to his apartment and took his younger brothers and sister downstairs. He went through the gangway leading to the back of the building and saw the defendant and his brother running toward him. When he reached the back of the building, he heard the defendant say: "I got that house and I am going to get Ida Well's house next."

Hattie Rucker lived at 612 North Spaulding from January of 1971 until the fire in September. She knew the defendant by his nickname, Baby. On July 9, 1971, while she was standing at an open front window in her living room, she saw the defendant and heard him say to the others who were standing with him: "If we couldn't live in the building it was no other going to live there [sic]." She left home and discovered there had been a fire when she returned that evening. The Tisley family did not live in the building between July 9, 1971, and August 6, 1971, but Mrs. Rucker saw the defendant in the area several times. In the early morning of August 6, 1971, Mrs. Rucker testified she was again standing near her front window when she saw a man whom she identified as the defendant go into the entrance at 614 North Spaulding. She could see his face. He was carrying a bottle about 10 inches long and 4 inches in diameter which was burning at the small end at the top. After 4 or 5 minutes had elapsed, the defendant came out, and Mrs. Rucker heard "a big explosion."

After that evening Mrs. Rucker saw the defendant about a week later. She was again standing at the front window of her second floor apartment when she saw the defendant standing outside with two other persons. She heard the defendant tell them: "If we can't stay in the building, nobody else is going to stay because we are going to burn it down."

On cross-examination Mrs. Rucker testified that at the times in question she was not employed and she happened to be near her windows. Around August 6 she was sleeping during the day and staying up most of the night. On that date she saw the defendant holding a burning bottle containing some type of liquid and walking into the gangway. Somebody ran out of the building in front of the defendant. It wasn't anyone she knew.

After the September 4, 1971, fire she talked to a Detective Keating, who questioned her about that fire. She told him she knew nothing. He subsequently questioned her about the August 6 fire, and she told him what she had seen.

There were no street lights on in front of her building, but the light was shining in from the school across the street. The light was sufficient to permit her to see that the defendant was wearing purple clothing of some kind.

Annie Rucker, 12 years old, testified that on September 4, 1971, at about 2 A.M. she saw the defendant standing outside her window and then running through the gangway. Shortly thereafter she went to bed and was later awakened by her sister who told her there was a fire. They jumped out the window to avoid the fire.

■■ The defendant first contends that the indictment is defective because the evidence showed that the person specified in the indictment as the owner of the building actually had no ownership interest at the time of the fire. Judging from the cases cited by the defendant, we believe the defendant means to say that there is a fatal variance between the allegation of ownership in the indictment and the proof. In any event, we judge that the indictment on its face alleges ownership sufficiently to apprise the defendant of the nature of the charge against him and that it would provide a bar to any subsequent prosecution for arson of the same building. We further judge that there is no variance between the proof and the indictment. The evidence shows that Hopson was a contract purchaser of the building, and there is nothing to show that he had been relieved of his legal obligation under that agreement to purchase. The Criminal Code defines property of another under the arson statute to mean "a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property." Ill. Rev. Stat. 1971, ch. 38, par. 20—1.

■■ In a case where an arson indictment alleged that the building was the property of a certain individual and the proof showed the individual was a lessee, the conviction was upheld. (*People v. Gaither,* 103 Ill.App.2d 47, 243 N.E.2d 388.) And in *People v. Ross,* 41 Ill.2d 455, 244 N.E.2d 608, a conviction was affirmed where the indictment alleged that the property was the building of a savings and loan association and the proof showed the association was a mortgagee. The reasoning of those cases is applicable here; and we hold that a contract purchaser "has an interest which the [defendant] has no authority to defeat or impair."

Ida Mae West testified that she saw the defendant and his brother Leroy walking across the street from 612 and 614 Spaulding on July 9, 1971. She also testified that she saw both of them around 612 Spaulding quite often between July 9 and August 6, 1971. On cross-examination the following occurred:

"Mr. Sammons: Q. You have bias, and wish to do harm to Lucille Tisley, the defendant's mother?

A. No, I don't have anything against the Tisleys.

Q. Nothing? Didn't you accuse *them* of committing a crime against your husband?

A. I didn't.

Mr. Reilley: Objection.

The Court: Overruled. It may go to some bias.

Mr. Reilley: The word "accuse," now, accuse whom; when?

The Court: I will sustain the objection to "accuse." I think the form is bad.

Mr. Sammons: Q. Was your husband shot on or about the third of July, 1971?

A. My boy friend was shot July 4th.

Q. Is his name Lucarelli?

A. Yes.

Q. Is he presently your boy friend?

A. Yes.

Q. Is he in court today?

A. Yes.

Q. And was he, in fact, shot on or about July 4, 1971?

A. Yes, he was shot.

Q. You were not a witness to that shooting, were you?

A. It wasn't never found who shot him.

Q. Were you a witness to that shooting, madam?

A. I don't understand "witness."

Q. Did you see the person that shot your husband?

A. Oh, no.

Q. Or your boy friend?

A. No, I didn't see the person who shot him, no.

Q. Nevertheless, you told a policeman, the same day, he was shot by "Babe-Babe and "Spider Man," did you not?

A. No, I did not; because if I had—

Mr. Reilley: Objection.

The Court: Sustained." (Emphasis added.)

The defendant now contends that this exchange shows that the court improperly restricted his attempts to show the bias of the witness against him. We disagree. She was asked if she ever accused the Tisleys, not the defendant, of shooting her boy friend. And she was permitted to answer that she had not. She denied that she had ever told the police that Babe-Babe, that is, the defendant, and his brother Leroy, or Spider Man, had shot her boy friend. The defendant never offered any evidence to show

that she had ever accused the defendant. On re-direct examination she specifically said she did not know who shot her boy friend, and she specifically denied that she thought the defendant or his brother had done the shooting. Consequently, we fail to see how the defendant can maintain he was not permitted to show any possible bias arising from the shooting of her boy friend. We note parenthetically, that Ida Mae West's testimony centered on the occurrence of July 9, the date of a fire for which the defendant was acquitted.

Patrick McFarland at the time of trial had been a fireman for 4½ years and had been engaged in 100 to 150 fires per month for over 3 years. Many of the fires had involved apartment buildings. On August 6, 1971, he went to a fire at 614 North Spaulding. When he arrived there he saw heavy smoke on the first floor and flames coming from all the front windows. There were flames on all floors. After he entered the building, the third floor landing fell on his head, and he was taken to a hospital. When he was asked if he noticed anything unusual about this fire, he said:

> "What I found out unusual about that fire was there was all kinds of flames, a lot of flames, and the apartment was abandoned, and I believe there might have been an accelerant to help it."

An objection was sustained on the ground of insufficient foundation. The State's Attorney again asked him, based on his experience as a fireman and what he observed, whether he had an opinion as to "what may have been used and involved in the fire." An objection was again sustained on the ground of insufficient foundation. He then testified in response to questions by the State's Attorney that the heat was intense and that he had encountered fires with less intensity in buildings with stairways. When he was again asked if he had an opinion as to the "probable cause, or causes, of that fire," the court said in response to an objection: "I will let him give an opinion for what it is worth." The witness then answered: "In my own opinion, I think there was something to help this fire along." The cross-examination then disclosed that the witness was unfamiliar with many terms used in the study of fire causation. The court repeatedly overruled objections by the State's Attorney stating that, since the State had submitted him as an expert witness, the questions were proper because they went "to his expertise." The witness recited the different causes of fires and said that he was unable to say whether the fire was started by electric wires or not. He did not see any accelerant in the building nor did he smell any. The defendant now assigns as error the fact that this witness was permitted to give an opinion as to the probable cause of the fire.

■■ After McFarland had testified, the court in denying the motion to strike his testimony said:

"I think it goes to the weight of it. Let's say you damaged him rather badly with your cross examination; however, I think it goes to the weight of it, not to its competency. I will deny the motion to strike."

Whether a witness has been qualified as an expert is left to the broad discretion of the trial judge. (*Stanley v. Board of Education*, 9 Ill.App.3d 963, 971, 293 N.E.2d 417.) The remarks of the trial judge, taken with his initial ruling sustaining objections to the opinion of the witness, his comment that he would permit the testimony for "what it is worth," and his overruling of the State's objections disclose that he gave no weight to the opinion evidence of McFarland. Consequently, we judge that the admission of the opinion of McFarland, if it was error, was harmless. And we further judge that the evidence, absent the testimony of Mc-Farland, is sufficient to sustain the conviction.

■■ The defendant also argues that Hattie Ruckers' testimony is not worthy of belief as a matter of law and that all the witnesses were part of a conspiracy against him. Neither assumption is supported by the record; and since Hattie Rucker's credibility was for the trial court to determine, the defendant was proved guilty beyond a reasonable doubt.

■■ Finally, the defendant contends that his sentence of 3 to 12 years is excessive. At the time of sentencing he was 23 years of age. In 1966 he had been placed on probation for theft and later fined $200 for resisting arrest. In 1967 he was sentenced to 6 months for criminal damage to property. We can think of few more dangerously irresponsible, if not vicious, acts than setting fire to a building containing several families in the early morning hours, and we see no reason to upset the trial judge's determination of a proper sentence. For a factually similar case where the reviewing court upheld the 10 to 20 year sentence of a defendant who had no previous criminal record, see *People v. Grayle*, 2 Ill.App.3d 4, 6, 276 N.E.2d 98.

The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE and GOLDBERG, JJ., concur.