THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEBRA SMITH, Defendant-Appellant.

First District (5th Division)    No. 1—91—2319

Opinion filed January 21, 1994.—Rehearing denied March 3, 1994.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Laura L. Morrison, and Sang Won Shim, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Defendant Debra Smith was charged by information with arson and aggravated arson. Following a jury trial, she was found guilty of aggravated arson and sentenced to 12 years' imprisonment. In her appeal, defendant alleges that the State failed to prove her guilty of arson, that she received ineffective assistance of counsel, that the jury instructions were internally inconsistent and that the trial judge considered inappropriate factors in sentencing her. Additionally, in a post-appeal motion, defendant argues that no rational trier of fact could have found her guilty beyond a reasonable doubt. At present defendant has been released on bond pending appeal in order to receive cancer treatment at the University of Chicago Hospital. For the reasons which follow, we affirm the decision of the trial court.

Prior to the fire which occurred on February 19, 1989, defendant was the owner and landlord of the apartment building at 7001 South Perry, Chicago. At trial, her several tenants (Sharon Lee, Benjamin James, Brian Cross, and Ernest Wilcox) testified that defendant had lived in the building with her four children and that for some time before the fire, utilities and heating were sporadic because defendant had trouble paying the bills. The tenants further testified that when they had started withholding rent, defendant had become angry and had threatened to burn the building down. Specifically, Ernest Wilcox (who had lived in the building approximately nine months and whose apartment had been searched by the police during a drug raid)

testified that on February 18, 1989, the day before the fire, he and Brian Cross had had an argument with defendant about rent money which they would not pay because there was no heat and the lights kept going out. According to Wilcox (and confirmed by Cross and James) defendant had said that she was going to "set the f-ing building on fire." Wilcox further testified that he saw defendant moving her belongings out of the house on February 18. On February 19, he saw her in the company of a young man who poured gasoline on the front porch of the home and started the fire. Additionally, Benjamin James testified that defendant phoned Sharon Lee just minutes before the fire and told her to get out of the apartment as new owners were coming.

In defense, Debra Smith denied burning the building or being with anyone who burned it, or making any threats regarding the burning. She testified that the building was her home and her sole source of income. She had no insurance on the building. Defendant further testified that the heated argument which took place the day before the fire was because of the rent owed by her tenants, and because she was upset at the drug dealing out of her building. Defendant alleged that Ernest Wilcox and the men staying in his apartment were dealing the drugs. When she had first become aware of the drug dealing, defendant had reported it to the police, who had come out and arrested five men in Wilcox's apartment. Sometime later Wilcox had threatened her about giving him a hard time, and subsequently defendant's van had been blown up. Although defendant reported this incident to the police, she did not sign a complaint as she was afraid for herself and her children. Shortly after the argument with Wilcox on February 18, defendant moved out of the apartment because she was so afraid of "the activities that was taking place and people walking around with pistols[,] bamming on my door [with pistols] several times all through the day."

On appeal, defendant initially argues that she was erroneously convicted of aggravated arson because all of the elements of arson (a lesser included offense) were not proven beyond a reasonable doubt. Applicable statutory authority defines arson and aggravated arson as follows:

"Arson. A person commits arson when, by means of fire or explosive, he knowingly:

(a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent; or

(b) With intent to defraud an insurer, damages any property or any personal property having a value of $150 or more.

Property 'of another' means a building or other property,

whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property." 720 ILCS 5/20—1 (West 1992).

"Aggravated arson. (a) A person commits aggravated arson when in the course of committing arson he knowingly damages, partially or totally, any building or structure, *** and (1) he knows or reasonably should know that one or more persons are present therein or (2) any person suffers great bodily harm, or permanent disability or disfigurement as a result of the fire or explosion or (3) a fireman or policeman who is present at the scene acting in the line of duty, is injured as a result of the fire or explosion." 720 ILCS 5/20—1.1 (West 1992).

The two-count indictment on which defendant was tried alleged that she had committed the offense of arson in that "she, by means of fire knowingly damaged real property, the building of the Department of Housing and Urban Development of the United States of America without the consent of the Department of Housing and Urban Development [(HUD)]." It also alleged that she committed the offense of aggravated arson in that she, "in the course of committing arson, knowingly damaged a building and structure located at or about 7001 South Perry, Chicago, and that she knew or reasonably should have known that one or more persons were present therein."

Defendant contends that the State did not prove an essential element of the offense of arson because she did have the authority to defeat or impair any interest which HUD may have had in the Perry Avenue property at the time of the fire. At trial, the State presented two witnesses who testified to the nature of HUD's interest in the property. Ernest J. Codilis testified that he was a lawyer representing real estate mortgage bankers. On September 1, 1988, he had filed a suit for foreclosure on behalf of West America Mortgage Company on the building at 7001 South Perry in Chicago. On direct examination Mr. Codilis testified that there were three guarantors on the mortgage note: Debra Smith, Desiree Jones, and Patrick Kenny. He stated that mortgage payments on the property were in arrears and that therefore foreclosure procedures had begun. Mr. Codilis further testified that HUD was an insurer or guarantor of the mortgage issued by West America, and that in the event that foreclosure was completed, HUD would be paying the mortgage company its principal, interest, escrow advances and attorney fees, and in return, would be receiving the title to the property. However, Mr. Codilis also testified that at the time of the fire, foreclosure proceedings had not been completed and defendant possessed the statutory right of

redemption which would have allowed her to come in and pay off the loan, thus allowing dismissal of the foreclosure action (and, ultimately, the passage of title to HUD). Defendant, however, never exercised this right of redemption, and by the time of trial, foreclosure proceedings had been completed and title to the property had actually passed to HUD. (On cross-examination, Mr. Codilis admitted that title to the building at 7001 South Perry was actually held in trust by American National Bank and that the trust beneficiaries were the three guarantors previously mentioned: Debra Smith, Desiree Jones and Patrick Kenney. He also noted that American National had signed an exculpatory clause, basically releasing it from any liability on the note. On redirect examination Mr. Codilis stated that American National Bank was a land trustee.)

The State's other witness regarding HUD's interest in the property was Allen Hajewski, chief of single-family property disposition for HUD. He, like Mr. Codilis, testified that in February 1989, HUD had insured a mortgage on the building in question. He explained that the insurance guaranteed to make the mortgage company whole should there be a foreclosure on the property. On cross and recross, Mr. Hajewski conceded that HUD did not own or have an ownership interest in the property at the time of the fire. On redirect he admitted that at the time of trial, HUD did have an ownership interest as it had received title after foreclosure.

In her own testimony at trial, defendant stated that although she had not made monthly mortgage payments for some months, at the time of the fire, she was still responsible for the payments.

In her argument on appeal, defendant maintains that at the time of the fire HUD did not have an interest in the property which could not be impaired or defeated by defendant herself. As a guarantor of the mortgage held by West America, HUD did have an interest in the property at 7001 South Perry. The interest, however, was a contingent interest—that is, contingent on the completion of a mortgage foreclosure. Although foreclosure proceedings had begun at the time of trial, defendant's right to redeem her property still existed. Thus, by resuming payments on the mortgage, defendant would have been able to retain title to her property and defeat HUD's contingent interest. The State has several arguments in response. Initially, it argues, citing *People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470, that in recent years Illinois case law has recognized a broad, liberal definition of ownership of property. In this regard, it notes that a leaseholder's interest is covered by the arson statute. (See *People v. Johnson* (1971), 3 Ill. App. 3d 158, 279 N.E.2d 47 (in which the indictment was not defeated because it charged the accused

with arson of the building of the named corporation, and such corporation did not own, but only leased, the building). See also *People v. Gaither* (1968), 103 Ill. App. 2d 47, 243 N.E.2d 388 (in which the named person was neither the owner nor the lessee of the entire building, but was merely the lessee of one of the apartments in the building).) Additionally, in *People v. Tisley* (1974), 20 Ill. App. 3d 145, 313 N.E.2d 204, the requisite property interest was extended to a contract purchaser, and in *People v. Ross* (1986), 41 Ill. 2d 445, 244 N.E.2d 608, to a mortgagee who had received a court order of possession through foreclosure. In fact, in *People v. Rawls* (1978), 57 Ill. App. 3d 702, 373 N.E.2d 742, the reviewing court found that all the State need prove was the mere existence of persons, and not their specific identities, whose interests in the building defendant could not defeat or impair. (See also *People v. Feinberg* (1971), 2 Ill. App. 3d 83, 276 N.E.2d 95.) Thus, as the State alleges, these cases do support a broad reading of "property interest" and even indicate that the property owner need not be named in the indictment.

■ This is not a case, however, of naming in the indictment an individual with an existing property interest in the premises at the time of the fire. We agree with defendant that HUD did not have a property interest in the burned premises at the time of the fire that defendant could not defeat or impair by exercise of her redemption rights. The fact that HUD had the requisite interest at the time of trial as a result of foreclosure proceedings is of no consequence because the property interest referred to in the arson statute is one in existence at the time of the fire.

Several witnesses at trial, however, did testify as persons or about persons having such an interest in the burned premises at the time of the fire. HUD witness Codilis testified that Desiree James and Patrick Kenny were co-owners of the premises. State witnesses Lee, James, Cross and Wilcox testified that they were lessees of apartments in the burned premises at the time of the fire. Although the entity named in the indictment, HUD, did not have the requisite interest at the time of the trial, persons having such an interest in the premises at the time of the fire did testify as to that interest at trial. This satisfies the *Rawls* requirement. Apartment lessees have an interest in real property at the time of a fire that is protectable under the arson statute. (*People v. Gaither* (1968), 103 Ill. App. 2d 47, 243 N.E.2d 388.) This testimony was not challenged and was sufficient to inform the defendant of the exact charge against her to enable her to prepare a defense and to protect her from being tried again for the same offense.

■ In a different approach to the issue of HUD's interest in the

property, the State contends that this interest is really not contingent, as defendant had no right of redemption and could not have defeated the foreclosure proceedings which had already begun. As a basis for this argument, the State maintains that since the property at issue was owned by a land trust, and defendant was a beneficiary of that trust, she had no real property interest to which the right of redemption would apply, as her interest was only personalty. Case law does support the proposition that a beneficiary's interest in a land trust is personal property and not real property. (*Sheridan v. Park National Bank* (1981), 97 Ill. App. 3d 589, 422 N.E.2d 1130.) However, this theory was neither pled nor proved in the trial court, where ample testimony regarding defendant's right of redemption was given by the State's own witnesses. The jury was never informed of any personal property rights which would defeat defendant's right of redemption. It is too late to raise this theory on appeal. *Johnston v. Hilton Hotel Corp.* (1989), 190 Ill. App. 3d 197, 546 N.E.2d 617.

Defendant next contends that she received ineffective assistance of counsel. She maintains that because of her counsel's choice of legal arguments, the trial court refused to allow the testimony of probation officer Deborah Armand, which would have impeached the credibility of Wilcox, the sole eyewitness to the alleged arson.

During the course of the trial, defense counsel had attempted to discredit Wilcox's testimony by showing that he was involved with drugs. Some of the questioning centered around Wilcox's use of a portable telephone to call the fire department. Defense counsel had asked Wilcox if he had the portable phone because he was, in fact, dealing in drugs. Wilcox denied that he dealt with drugs and instead maintained that he had the phone because he was the maintenance man at City Chevrolet. At the conclusion of his testimony, Wilcox entered the room in the back of the court room and conversed with Sharon Lee. (Witnesses Benjamin James and Brian Cross, as well as probation officer Armand, were also present in the back room at this time.) Sharon Lee allegedly asked Wilcox, "What did he ask you?"[1] Wilcox replied, "He asked me about my cellular phone, did I use it to sell drugs. And I start to tell him yes." Then Wilcox and Lee started laughing.

Upon learning of this conversation (from probation officer Armand), defense counsel sought to admit this testimony in order to preclude or have stricken testimony by other State witnesses, for violating the court's order to exclude witnesses. The court denied

---

[1]This testimony was given by means of an offer of proof of Armand's testimony.

defense counsel's requests. On appeal defendant argues that trial counsel chose the wrong legal avenue by which to introduce Armand's testimony. Defendant insists that the trial court would have admitted the testimony at issue if it was offered to impeach and discredit Wilcox's testimony in the State's case in chief. Defendant contends that trial counsel should have called Wilcox in its own case as a hostile witness and cross-examined him about conversing with Sharon Lee in the back room and his dealing with drugs. Then, according to defendant, impeachment could have been proved up with the probation officer's testimony. Defendant argues that had trial counsel followed this approach to Armand's testimony, not only would such testimony have been admitted, but it would have changed the outcome of the trial. Therefore, defendant reasons, her trial counsel's performance was defective and thus ineffective. We will assume, *arguendo*, that Armand's testimony was admissible to impeach eyewitness Wilcox if a proper foundation for its admission had been presented to the court by defense counsel.

■ It is, however, unlikely that counsel's failure to call Wilcox in his case in chief (and then impeach him with the evidence that he and Sharon Lee laughed over the use of the phone) would have changed the outcome of the trial. Three witnesses (Sharon Lee, Benjamin James and Brian Cross) had all testified that defendant had made threats to burn the building down on numerous occasions. There was also testimony that defendant had solicited help in burning down the building from Sharon Lee and Benjamin James. The day before the fire, defendant had gone to Sharon Lee's apartment and told Benjamin James to take good care of his aunt. While the fire was raging, defendant had called Sharon Lee and Benjamin James and told them to leave the building because the new owners were coming. Additionally, the day before the fire defendant had moved out of the building. Finally, Wilcox testified that he saw defendant with the man who actually set the fire. Based on the implications of the above-established facts, we conclude that the impeachment of Wilcox as to whether he used the portable phone to sell drugs would not have changed the verdict reached by the jury.

In order to prove ineffective assistance of counsel, a claimant must show both prejudice and deficiency. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) We have already indicated that no prejudice resulted from the inability of defense counsel to have Armand's testimony admitted. Additionally, we note that defense counsel's performance was anything but deficient. Counsel filed and argued a number of motions both before and after trial. He made both opening and closing arguments at trial

setting out defendant's position. He vigorously cross-examined the State's witnesses and presented witnesses on defendant's behalf. The record clearly evidences his effective representation of defendant in the instant case. Accordingly, his efforts at zealously representing his client cannot be characterized as deficient, and defendant's claims of ineffective assistance of counsel must necessarily fail.

Defendant next maintains that jury instructions were internally contradictory, thus injecting a charge not made in the indictment. In this regard, defendant argues that since arson of real property was the only arson being tried, the trial court erred in permitting, over repeated defense objection, a jury instruction that defined arson as involving both real and personal property. The instruction at issue (the People's instruction No. 11) reads as follows:

> "A person commits the offense of arson when he by means of fire knowingly damages real property of another without his consent. *Property 'of another' means a building or other property, whether real or personal* in which a person other than the defendant has an interest which the defendant has no authority to defeat or impair, even though the defendant may also have an interest in the building or property." (Emphasis added.) (Illinois Pattern Jury Instructions, Criminal, No. 15.01 (2d ed. 1971).)

The committee note that follows this instruction provides that the last paragraph (which begins with the words "property of another") should be given only when the evidence shows that the defendant claims some interest in the property. It is this paragraph generally, and the language "whether real or personal," to which defendant objects.

■ Defendant maintains that this paragraph should not have been included as it improperly interjects the inapplicable and confusing question of personal property. This contention is facially invalid as the notes themselves provide that this paragraph is to be given whenever a defendant claims some interest in the property at issue, be it real or personal property. Since the defendant in the case at bar did claim an interest in the property which burned (she was a co-maker of the note and claimed that because of her right of redemption she could defeat HUD's interest in the property), this paragraph is especially appropriate if not essential. Also, an analysis of the language shows that it simply expands the meaning of the phrase "or other property" which immediately precedes it. The fact that the word "or" separates the words "real" and "personal" clarifies and explains (rather than confuses) exactly what is at issue.

Even if the mention of the word "personal" were considered confusing, any such misunderstanding would have been cleared up

by the following instruction, which indicated that one of the issues before the jury was the damage to "real property" belonging to HUD.

■ In a post-trial motion, which we have taken with the case, defendant contends that she was not proven guilty beyond a reasonable doubt. In this argument, she contends that the testimony of Wilcox (the purported eyewitness to the account), that he saw defendant's companion pour gasoline all over the front porch and light it, conflicts with the actual physical evidence of the fire, as well as the accounts of the fire given by the State's two arson experts. Even though the arson experts did differ as to their opinions of the origin of the fire, and even though Wilcox's account may not entirely substantiate either one of them, there was still ample evidence from which the jury could conclude that defendant was guilty beyond a reasonable doubt. This evidence includes defendant's repeated threats to burn the building, her attempts to solicit help in burning the building, her move the day before the fire, and her warning calls to Benjamin James and Sharon Lee. We find that a rational trier of fact could have considered the above circumstantial evidence and found defendant guilty beyond a reasonable doubt.

Defendant also asserts that the trial judge abused his discretion in sentencing her to 12 years' imprisonment. In this regard, defendant contends that the trial judge inappropriately considered as an aggravating factor the jeopardy fire fighters are placed in when fighting fires and, further, that the judge's remarks betrayed his prediliction for placing arsonists in his "disfavored" sentencing category.

In arguing that the trial judge abused his discretion by considering the danger to fire fighters, defendant relies on *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, *People v. Miller* (1989), 193 Ill. App. 3d 918, 552 N.E.2d 988, and *People v. Rhoads* (1986), 141 Ill. App. 3d 362, 490 N.E.2d 169. These cases, however, are all distinguishable from the instant action, as the respective courts in *Conover*, *Miller* and *Rhoads* all found error in the trial court's consideration of some statutory element of an offense as an aggravating factor in sentencing. For example, in *Miller*, which involved a manslaughter conviction, the trial court considered death as the severe bodily injury necessary for the imposition of a consecutive sentence. On appeal, defendant's sentence was vacated as the court found that an essential element of an offense cannot also be relied on to enhance the penalty for the commission of that same offense. (*Miller*, 193 Ill. App. 3d at 930, 552 N.E.2d at 996.) Similarly, in *Conover*, which involved a conviction for burglary, the trial court inappropriately considered the proceeds taken by the defendant in imposing sentence, when it

had already considered the proceeds as an element of the offense. (*Conover*, 84 Ill. 2d at 405, 419 N.E.2d at 909.) Likewise, in *Rhoads*, the reviewing court found that the trial judge had abused his discretion in considering the threat of physical harm to others as an aggravating factor in imposing a sentence for armed robbery, as the threat of serious harm is an element of the offense of armed robbery.

■ While the aforementioned authorities do support the proposition that it is error to consider an element of the offense as an aggravating factor in imposing punishment, they do not support defendant's argument that it is error for the trial court to consider something other than a statutory element of the offense in imposing sentence. Danger to fire fighters is not a statutory element of the offense of aggravated arson. In order to sustain a conviction for aggravated arson, the State must prove:

(1) defendant, in the course of committing arson, knowingly damaged any building, and

(2) when the defendant did so,

(a) he knew or should have known that one or more persons were present in the building, or

(b) any person suffers great bodily harm, or permanent disability or disfigurement as a result of the fire or explosion, or

(3) a fireman or policeman who is present at the scene acting in the line of duty, is injured as a result of the fire or explosion.

See 720 ILCS 5/20—1.1 (West 1992).

Accordingly, the danger posed to firemen and policemen is not an element of the offense of aggravated arson, even though an injury suffered by a fireman or policeman may be an element. It is therefore not reversible error for the trial judge to have considered the danger posed to firemen in imposing sentence on defendant.

■ Defendant also maintains that the sentencing judge abhorred arsonists as a category because of the inherent threat of harm in any arson, and that he therefore abused his discretion when he sentenced defendant more severely because defendant fell within his category of disfavored offenders. In support of this proposition, defendant relies on *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168. *Bolyard*, however, is distinguishable because in that case the trial judge openly indicated not only that he considered the offense of taking indecent liberties with a child to be the "most sinful, reprehensible act of all offenses" but also stated that even though probation was a legitimate sentencing option, he personally subscribed to the policy of increasing a defendant's sentence when his attorney requested probation. (*Bolyard*, 61 Ill. 2d at 585, 338 N.E.2d at 169.) Even though the trial judge in the instant action expressed his disdain for arsonists, his remarks did not rise to the level of intolerance

expressed in *Bolyard* and therefore do not involve an abuse of discretion.

Furthermore, well-settled case law supports the State's contention that the trial court is the proper forum for determining a sentence, and, therefore, its sentencing decisions are entitled to great weight and deference. (*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998.) Although we might have imposed a different term were we in the position of the sentencing judge, we cannot say that the term imposed represents an abuse of discretion.

As we mentioned at the beginning of the opinion, defendant was diagnosed as having cancer after her sentence and commitment to the Department of Corrections. She is currently released on appeal bond to receive treatment for her illness. Defendant's medical condition was unknown to the judge at the time of the sentencing hearing. While we have determined that the 12-year sentence was a proper exercise of discretion by the trial judge, we affirm the conviction but remand this matter to the trial court for the purpose of a hearing to determine the current state of defendant's health and treatment. After receiving the information about the current state of defendant's health and treatment, the court may then determine what effect, if any, it should have on the appropriate sentence to be imposed in this matter.

For the aforementioned reasons, the conviction is affirmed and the cause remanded to the trial court for proceedings consistent with the views expressed herein.

Affirmed and cause remanded.

MURRAY and COUSINS, JJ., concur.