Sixth Division
December 10, 2010

No. 1-08-3092

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 07 CR 13027 |
| | ) | |
| FREDERICK STEWART, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Joseph G. Kazmierski, |
| | ) | Judge Presiding |

JUSTICE McBRIDE delivered the opinion of the court:

Following a jury trial, defendant, Frederick Stewart, was found guilty of arson and aggravated arson and the trial court sentenced him to concurrent terms of six and nine years' imprisonment, respectively. On appeal, defendant contends that (1) the State failed to prove him guilty of arson and aggravated arson beyond a reasonable doubt; (2) the trial court abused its discretion by admitting the death certificate of Willie Jones into evidence; (3) the court failed to properly question the prospective jurors pursuant to Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007); and (4) the court abused its discretion by failing to instruct the jury on the lesser-included offense of criminal damage to property.

Jury selection in this case began on August 20, 2008. The trial court initially made the following statements to the venire.

"Under the law, the defendant is presumed to be innocent of

the charges against him. This presumption remains with him throughout every stage of the trial and during deliberations on the verdict and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden remains on the State throughout the case. The defendant is not required to present any evidence on his own behalf."

The trial court then questioned the first panel of prospective jurors:

"Okay. Do all of you understand and accept the following fundamental principles of our legal system:

That a person accused of a crime is presumed to be innocent of the charges against him, that that presumption stays with the defendant throughout the trial and is not overcome unless from all the evidence you believe that the State proved his guilt beyond a reasonable doubt; that the defendant does not have to prove his innocence; that the defendant does not have to present any evidence on his own behalf. Do all of you understand those principles apply to this case, everybody?

Anybody have any problem with any of those principles, let

me know, please."

Defense counsel then questioned the first panel, stating, "Now, the judge explained to you that the Defense has no burden in this case. If Mr. Stewart decided not to testify, which is his right, would you consider that in your verdict?" One potential juror responded "perhaps" to defense counsel's question and stated that it would "depend[] on the Judge's instruction." The trial court responded, "I will instruct you in that regard, that if the defendant chooses not to testify, that fact must not be considered by you in any way in arriving at your verdict." The same potential juror stated, "then it won't be considered by me." Defense counsel then asked the prospective jurors individually whether they would consider defendant's decision not to testify in arriving at a verdict. All of the prospective jurors responded that they would not, except for one juror who responded "possibly" and another who responded, "I'm not certain yet, but I would have to hear the circumstances of the situation first."

The trial court proceeded to question the second panel of prospective jurors as to whether they understood and accepted the following principles:

> "That a person accused of a crime is presumed to be
> innocent of the charges against him, that that presumption stays
> with the defendant throughout the trial and is not overcome unless
> from all the evidence you believe that the State proved his guilt
> beyond a reasonable doubt; that the defendant does not have to
> prove his innocence; that the defendant does not have to present
> any evidence on his own behalf."

Defense counsel posed the following question to the second panel of prospective jurors:

> "I know the judge asked you a question similarly along these lines, but if Mr. Stewart does not take the witness stand, would any of you hold that against him, by a show of hands about him not testifying?
>
> No show of hands."

The trial court then questioned the third panel of prospective jurors:

> "Do all of you understand and accept the following fundamental principles of our legal system:
>
> That a person accused of a crime is presumed to be innocent of the charges against him, that that presumption stays with the defendant throughout the trial and is not overcome unless from all the evidence you believe that the State proved his guilt beyond a reasonable doubt; that the defendant does not have to prove his innocence; that the defendant does not have to present any evidence on his own behalf.
>
> Do all of you understand those principles apply to this case?"

Defense counsel asked each prospective juror individually whether he or she would consider defendant's decision not to testify in arriving at a verdict. All of the jurors responded that they would not.

The following evidence was presented at defendant's trial.

Chicago police officer Erin Murphy testified that on June 8, 2007, she was on patrol in a marked police car with her partner, Officer Timothy Tantillo. At approximately 4:20 a.m., Officer Murphy was patrolling the area of 53rd Street and Princeton Avenue in Chicago, Illinois, which is a residential area with a number of abandoned buildings and vacant lots. Officer Murphy was patrolling north on Princeton when she looked through an alley to South Shields and observed a man, whom she identified as defendant, holding a red gas can and standing on the first-floor back porch of a vacant building located at 5405 South Shields. The officer, who was familiar with the area, testified that Shields was one block to the west of Princeton, that an alley ran between the two streets, and that people still lived in the area. Officer Murphy was able to see the building on Shields because there were only vacant lots between her and defendant.

As Officer Murphy drove through the alley toward the building located at 5405 South Shields, she noticed that defendant was wearing latex gloves and that the gas can's spout was sticking out. When Officer Murphy passed defendant, he fled on foot across several vacant lots toward Princeton. Officer Murphy followed in her squad car and saw defendant throw the gas can and the black shirt he was wearing to the ground. Defendant ultimately hopped a fence and ran into the backyard of 5345 Princeton, where he was placed into custody by Officer Tantillo. Defendant was still wearing the latex gloves at the time, and Officer Murphy was present when Detective Bell removed them from him.

Officer Murphy then retrieved the gas can and shirt that defendant had discarded. Officer Murphy saw that the back porch defendant had been standing on was on fire and called the fire

department. She described the fire as "huge" and testified that the entire back porch was "up in flames" and that all of the windows on the back of the house were "busting out." Officer Murphy described the weather at that time as "very windy" and testified that the wind was blowing "so strong" to the north that it had blown the fire across the alley to a house located at 5354 South Princeton, which caught on fire. Officer Murphy also testified that the shirt she recovered smelled of gasoline and that defendant also smelled of gasoline when he was taken into custody. On cross-examination, Officer Murphy testified that she witnessed her partner search defendant when he was placed into custody and that she did not see her partner recover matches, a lighter, or any other item from defendant that could be used to start a fire.

Ryan Rivera, a fire marshal for the city of Chicago, was qualified as an expert in the area of fire investigations. Rivera was called to the scene and learned that there had been a heavy amount of fire in rear of the second floor of the building located at 5405 South Shields and that the fire had spread to the roof of another occupied building. He examined the interior and exterior of the building at 5405 South Shields and determined that the fire started on the second-floor landing of the porch. He observed that at the rear of the house, the stairs leading to the second-floor landing were gone. He went through the interior of the house to the rear of the second floor where the fire started and observed that there was no flooring on the second floor landing. Because he had been told that there was a heavy amount of fire, he looked for something, such as a mattress or a sofa, that would have caused that amount of fire. He found no such object, which indicated that the fire was assisted by a flammable liquid. Moreover, the fire had burned evenly across the wooden flooring, which it does not normally do, and this also

indicated that the fire was assisted by a flammable liquid. Rivera also smelled gasoline at the rear of the second floor of the building and determined that the fire had been caused by criminal action.

Based upon his experience and examination of the scene, Rivera concluded that the fire was caused by the "open flame ignition of the flammable liquid vapors of an ignitable liquid" on the second-floor landing of the building. Rivera also explained that the fire "flew across" the alley and burned a hole in the roof of the other building. Based upon his experience and the fact that the wind was blowing at approximately 27 miles per hour at the time of the fire, Rivera concluded that it was "absolutely" "a possibility" that the initial fire spread to the secondary structure. On cross-examination, Rivera testified that there was evidence of squatters living in the building located at 5405 South Shields.

Officer Steven Bryan testified that at approximately 4:30 a.m. on June 8, 2007, he responded to a call of a foot chase in the area of the 5300 block of South Princeton. Upon arriving there, he observed a large number of people in their yards in the area and was flagged down by a woman who screamed, "my house is on fire." That house was located at 5354 South Princeton. Officer Bryan observed that the wind was blowing embers through the alley toward 5354 South Princeton and that the roof of that house was on fire. He notified dispatch of the fire and subsequently learned that there was another fire in a building that was located within the block.

Detective Kevin Bell of the bomb and arson squad responded to an arson investigation at 5405 South Shields. He retrieved the red gas can and the shirt defendant had been wearing from Officer Murphy and took a pair of latex gloves that were still on defendant's hands. The detective

1-08-3092

testified that defendant's shirt and the liquid inside the red can both smelled of gasoline. A spout was also screwed into the opening of the gasoline can. The detective testified that the building located at 5405 South Shields was abandoned and the following exchange then took place at the conclusion of Detective Bell's direct examination:

"Q. And how did you set out to determine who the owner of the property is?

A. Best way we do it is to check the County Assessor's taxpayer database.

Q. When you checked the database, did you learn in fact that the owner of the property - -

MS. SILVA [defense counsel]: Objection.

THE COURT: Sustained.

Q. [Assistant State's Attorney:] Did you learn who the owner of the property was?

A. Yes.

MS. SILVA [defense counsel]: Objection. Foundation

THE COURT: That answer will stand, yes.

MR. HOLLAND [Assistant State's Attorney]: No further questions."

Gregory Sloan testified that on June 8, 2007, he lived in and was the caretaker of the building located at 5354 South Princeton. The building was a multifamily dwelling that had

8

tenants on both floors. Sloan was sleeping in Chicago Heights in the early morning of June 8, 2007, when he received a telephone call informing him that something had happened to the building located at 5354 South Princeton. When he arrived there, he observed that the roof of the building was burnt. Sloan also testified that prior to June of 2007, he had seen defendant in the neighborhood "a couple of times" when he brought kids by the candy store that Sloan operated out of the house at 5354 South Princeton. Sloan also testified that "an older guy" used to live in the house located at 5405 South Shields but that no one lived in that house at the time of the fire.

The State then rested its case. The trial court denied defendant's motion for a directed verdict, and the defense then rested without presenting any evidence. Following closing arguments, the trial court instructed the jury that defendant was presumed to be innocent of the charges against him and that the presumption remained with defendant throughout trial and was not overcome unless from all the evidence the jury was convinced beyond a reasonable doubt that defendant was guilty. The court also instructed the jury that the State has the burden of proving defendant's guilt beyond a reasonable doubt, that defendant was not required to prove his innocence, and "the fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

The jury found defendant guilty of aggravated arson and arson. The trial court sentenced defendant to concurrent terms of nine and six years' imprisonment. This appeal followed.

Defendant contends that the State did not prove him guilty of aggravated arson beyond a reasonable doubt. He initially claims that the evidence presented at trial failed to establish that he "knowingly" damaged the building located at 5354 South Princeton, as required by the statute

defining the offense of aggravated arson.

Defendant asserts that this claim should be reviewed *de novo* because neither the facts nor the credibility of the witnesses are in dispute. See *People v. Smith*, 191 Ill. 2d 408 (2000). However, defendant is challenging the inferences that can be drawn from the evidence, and therefore his contention is a challenge to the sufficiency of the evidence presented at trial. See *People v. Hinton*, No. 3-08-0583, slip op. at 2-3 (June 22, 2010) (rejecting the defendant's claim that the court should review *de novo* his argument that he did not have notice or knowledge of an order of protection and finding that the defendant's challenge was to the sufficiency of the evidence because he was contesting the inferences that could be drawn from that evidence). When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). The trier of fact is responsible for assessing the credibility of the witnesses, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). Under this standard, a reviewing court resolves all reasonable inferences in favor of the State. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A criminal conviction will not be set aside on appeal unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Cox*, 195 Ill. 2d 378, 387 (2001).

Defendant was charged with committing the offense of aggravated arson "in that he, in the course of committing arson, knowingly damaged partially or totally any building or structure of

10

Gregory Sloane, located at 5354 S. Princeton, in Chicago, Illinois, and [defendant] knew or reasonably should have known that one or more persons were present therein." The aggravated arson statute provides, in relevant part:

> "A person commits aggravated arson when in the course of committing arson he or she knowingly damages, partially or totally, any building or structure, including any adjacent building or structure, *** and (1) he knows or reasonably should know that one or more persons are present therein ***." 720 ILCS 5/20-1.1 (West 2006).

The elements of aggravated arson, including the element of knowledge, need not be proven by direct evidence and instead may be inferred from the surrounding facts and circumstances. *People v. Burrett*, 216 Ill. App. 3d 185, 190 (1991). Section 4-5 of the Criminal Code of 1961 provides:

> "A person knows, or acts knowingly or with knowledge of:
>
> (a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.
>
> (b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5

11

(West 2006).

Defendant claims that the State failed to prove that by setting fire to the building located at 5405 South Shields, defendant was "consciously aware that it was practically certain" that the building located at 5354 South Princeton would be damaged. Defendant asserts that it was highly unlikely that the fire would spread from one building to the other given the distance and open space between the two structures. We disagree.

In this case, the facts and circumstances surrounding defendant's conduct support the inference that defendant acted with the mental state necessary to be convicted of aggravated arson. There can be no dispute that a natural consequence of fire is that it tends to spread. Defendant also does not dispute that he started the fire at 5405 South Shields and that the fire then spread to the roof of the building located at 5354 South Princeton. However, the record does not support defendant's assertion that it was "highly unlikely" that the fire at 5405 South Shields would spread to a nearby building. The record establishes that defendant started the fire at 5405 South Shields by igniting a flammable substance, the use of which created a "huge" and "heavy amount of fire." Moreover, defendant ignited that fire on the outdoor, second-floor landing of the building, which was made out of wood and which was observed by Officer Murphy to be "up in flames." Most importantly, the wind was blowing at 27 miles per hour near the time of the fire and Officer Murphy described the weather at that time as "very windy." Additionally, the area immediately surrounding 5405 South Shields was residential and comprised of buildings and vacant lots. Given the weather conditions at the time, a jury could rationally conclude that defendant's actions of using a flammable substance to ignite a fire on an outdoor wooden

structure attached to the building at 5405 South Shields made it a practical certainty that the fire would spread to a nearby building.

Further, a map of the area introduced into evidence shows that 5354 South Princeton is almost directly north of 5405 South Shields and Officer Murphy testified that when she arrived at the scene, the wind was blowing "so strong" to the north. Defendant acknowledges that the building located at 5354 South Princeton is no more than 300 feet from the building located at 5405 South Shields. The map of the area shows that the space between the two structures is comprised of an alley and primarily vacant lots. Defendant claims that this "great amount of open space" made it "highly unlikely" that the fire would spread between the two structures. However, we believe that a rational jury could reach the opposite conclusion and find that given the wind conditions, *i.e.*, the speed and direction of the wind, the "great amount of open space" and lack of other structures between the two buildings increased the likelihood that the fire defendant set at 5405 South Shields would spread to the building at 5354 South Princeton. In fact, Fire Marshal Rivera testified that the fire "absolutely" could have spread between the two structures and Officers Murphy and Bryan each observed the wind blowing embers or fire through the alley toward 5354 South Princeton. Under these circumstances, a rational trier of fact could have found that defendant knowingly set fire to the building located at 5354 South Princeton.

Defendant next claims that the State failed to prove beyond a reasonable doubt that the building located at 5405 South Shields was "adjacent" to the building located at 5354 South Princeton. Defendant asserts that the legislative history behind an amendment to the aggravated arson statute, which added the phrase "including any adjacent building," establishes that the term

"adjacent," as used in the statute, means "adjoining." The two buildings are not adjacent, defendant argues, because they are almost 300 feet apart, they are separated by five city lots, and they do not share a common border. The State responds that it was not required to prove that the two buildings were adjacent because adjacent is not a necessary element of the offense of aggravated arson and because defendant was not charged with damaging an adjacent building but, rather, he was charged with knowingly damaging the building located at 5354 South Princeton.

Initially, defendant cites no authority in support of his claim that "adjacent" is a necessary element of the offense of aggravated arson. A point raised on appeal that is not supported by citation to relevant authority is waived under Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)). *People v. Ward*, 215 Ill. 2d 317, 332 (2005). Moreover, the State did not charge defendant with damaging an "adjacent" building but, rather, with knowingly damaging the building located at 5354 South Princeton. Therefore, the State was not required to prove that 5354 South Princeton was adjacent to 5405 South Shields.[1] As discussed above, the State proved beyond a reasonable doubt that defendant knowingly damaged the building located at 5354 South Princeton. Therefore, we conclude that the State proved defendant guilty of aggravated arson beyond a reasonable doubt.

Defendant next contends that the State failed to prove him guilty of arson beyond a reasonable doubt. The relevant statute provides that "[a] person commits arson when, by means

---

[1]"Adjacent" is commonly defined as "lying near, close, or contiguous, neighboring." Webster's Unabridged Dictionary 28 (2d ed. 1998). Although the State was not required to prove that 5354 South Princeton was adjacent to 5405 South Shields, the evidence presented at trial clearly established that the two buildings were adjacent.

14

of fire or explosive, he knowingly: (a) [d]amages any real property, or any personal property having a value of $150 or more, of another without his consent." 720 ILCS 5/20-1 (West 2006). In this case, the State charged defendant with arson "in that he, by means of fire or explosion, knowingly damaged any real property, to wit, 5405 South Shields, Chicago, Cook County, Illinois, the property of Willie Jones without the consent of Willie Jones."

Defendant asserts that the State failed to prove the "of another" element of arson because the evidence presented at trial did not establish that Willie Jones or anyone else had an interest in the property located at 5405 South Shields. Defendant again claims that our review should be *de novo* because his claim involves only the determination of whether the uncontested facts met the State's burden of proof. However, we will review defendant's argument as a challenge to the sufficiency of the evidence because defendant is contesting the inferences that can be drawn from the evidence presented at trial. See *Hinton*, slip op. at 3.

The arson statute provides that "[p]roperty 'of another' means a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property." 720 ILCS 5/20-1 (West 2006). The "of another" requirement of the arson statute is interpreted broadly. See *People v. Smith*, 258 Ill. App. 3d 633, 638-39 (1994) ("Illinois case law has recognized a broad, liberal definition of ownership of property"). While it is not necessary to prove the identity of the owner or possessor of the premises, the proof must establish that the property is one in which someone other than the defendant has an interest which the defendant has no authority to impair. *People v. Rawls*, 57 Ill.

15

App. 3d 702, 705 (1978).

We conclude that the State failed to prove this element of the offense beyond a reasonable doubt. The State alleged in the indictment that Willie Jones was the person who had an interest in the building at 5405 South Shields. However, the primary evidence offered by the State to establish this element was Jones' death certificate, which lists his address as 5405 South Shields on the date of his death, September 22, 2006. At most, this established that Jones had an interest in the property eight months before the fire and it did not establish that Jones had an interest in the property at the time of the arson. Moreover, the eight-month period is simply too long, without more, to permit a reasonable inference that any interest Jones had in the building continued after his death until the time of the fire. The only evidence relating to that eight-month period was testimony that the building was vacant and that squatters had been seen inside of it. However, this evidence does not establish that Jones or anyone else had an interest in the property during that time or at the time of the fire. The only other evidence in the record is Sloane's testimony that "an older guy" used to live in the house at 5405 South Shield but that nobody lived in the house at the time of the fire. Even assuming that this was a reference to Jones, Sloane's testimony is only consistent with the death certificate and it does not add any greater proof that Jones had an interest in the property at the time of the arson.

The State claims that although Jones was deceased prior to the date of the arson, the death certificate supports the inference that Jones' estate owned the property at the time defendant set fire to it or that it was the property of the State. See 755 ILCS 20/1 (West 2008) ("If any person dies owning any real or personal estate without any legacy, and leaving no known

16

heirs or representatives capable of inheriting the same ***, such real and personal estate shall escheat as provided in the Probate Act of 1975 ***"). However, the State's theory of the case, as reflected in the indictment, was that Jones was the person who had an interest in the property at the time of the fire. Consistent with this theory, the State argued in closing that the death certificate established that Jones lived at 5405 South Shields "at one point in his life" and that because no one was living in the building at the time of the fire, defendant "damaged the real property of Willie Jones." The jury was also instructed that the State had to prove that defendant knowingly damaged the real property of Willie Jones. The State did not offer any evidence at trial to support the theory that Jones' estate owned the property at the time defendant set fire to it or that it was the property of the State. For example, no evidence was presented establishing what type of interest Jones had in the property and therefore there is no basis in the record to conclude that Jones had an ownership or other type of interest that could have gone to his estate or escheated to the State. In addition, it appears that the State had information as to who owned the building, as evidenced by Detective Bell's testimony that he used the county assessor's taxpayer database to determine the owner of the property. However, after the trial court sustained an objection on hearsay grounds when the State attempted to elicit the name of the property owner from Detective Bell, the State thereafter chose not to elicit any evidence as to who lived in or who owned the building at the time of the fire. In the absence of such evidence, the record is insufficient to permit the inference that the State suggests.

The State also claims that the testimony establishing that the building was vacant was sufficient by itself to prove that someone other than defendant had an interest in the property

because "logically a vacant building belongs to either the State or some other individual or entity that has not claimed the interest." The State further claims that the death certificate establishes that defendant was not the previous owner of the property and that, when these pieces of evidence are considered together, they establish that someone other than defendant had an interest in the property at the time of the fire.

We cannot conclude that evidence indicating that defendant did not have an interest in the property is sufficient to meet the State's burden of proving beyond a reasonable doubt that someone other than defendant had an interest in the property. The State does not cite to any authority holding that its burden of proof on this element was satisfied by evidence indicating that the defendant did not have an interest in the property. Moreover, although it is not necessary to prove the identity of the owner or possessor of the property, in each case cited by the parties there was some evidence indicating that a person or entity had an interest in the property at the time of the arson that the defendant had no right to impair. See, *e.g.*, *People v. Gaither*, 103 Ill. App. 2d 47, 55 (1968) (named person testified that she leased an apartment in the building); *People v. Tisley*, 20 Ill. App. 3d 145, 148 (1974) (evidence showed that a contract purchaser had an interest in the building); *People v. Ross*, 41 Ill. 2d 445, 450 (1968) (record showed that bank had received a court order of possession of the premises through foreclosure); *Smith*, 258 Ill. App. 3d at 637-39 (witnesses testified to the names of the co-owners of the premises and other witnesses testified that they were lessees of apartments in the building at the time of the fire); *Rawls*, 57 Ill. App. 3d at 703-04 (witness testified that she lived in an apartment in the building and that the apartment was damaged by the fire). The type of evidence that satisfied the State's

18

burden of proof in these cases is lacking in this case and we conclude that the evidence contained in the record is insufficient to prove that someone other than defendant had an interest in the property at the time of the fire.

While the trier of fact, in this case the jury, was responsible for weighing the evidence and drawing reasonable inferences from that evidence, its determination is not conclusive. *People v. Smith*, 185 Ill. 2d 532, 542 (1999). Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of defendant's guilt. *Smith*, 185 Ill. 2d at 542. In this case, for the reasons discussed above, we conclude that the evidence was insufficient to prove defendant guilty of arson beyond a reasonable doubt and we therefore reverse that conviction.

In a related argument, defendant claims that the trial court erred by admitting the death certificate of Willie Jones into evidence. However, this claim relates only to defendant's conviction for arson and we need not consider it given that we have reversed that conviction.

Defendant next contends that he was denied a fair trial because the trial court failed to question the prospective jurors on their understanding and acceptance of the legal principles outlined in *People v. Zehr*, 103 Ill. 2d 472 (1984), and set forth in Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007). We review defendant's contention *de novo*. See *People v. Tlatenchi*, 391 Ill. App. 3d 705, 721 (2009) (a trial court's compliance with supreme court rules is reviewed *de novo*).

In *Zehr*, 103 Ill. 2d at 476-78, our supreme court held a trial court abused its discretion during *voir dire* by refusing the defense counsel's request to ask questions about the State's

burden of proof, defendant's right not to testify, and the presumption of innocence. The court reasoned that "essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." *Zehr*, 103 Ill. 2d at 477.

In 1997, the supreme court amended Rule 431 to ensure compliance with the requirements of *Zehr*. 177 Ill. 2d R. 431, Committee Comments, at lxxix. Following that amendment, Rule 431(b) provided:

"*If requested by the defendant*, the court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the

principles set out in this section." (Emphasis added.) 177 Ill. 2d R. 431(b).

On March 21, 2007, the supreme court amended Rule 431(b) by removing the phrase, "If requested by the defendant." The amended version now reads:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

The amended version of Rule 431(b) now imposes a *sua sponte* duty on the trial court to question the potential jurors as to whether they understand and accept the *Zehr* principles. Such questioning is no longer dependent upon a request by defense counsel. *People v. Yarbor*, 383 Ill. App. 3d 676, 682 (2008).

Defendant claims that the trial court failed to comply with the amended version of Rule 431(b) because it did not question the prospective jurors as to their understanding and acceptance

of the principle that defendant's decision not to testify cannot be held against him. Defendant asserts that prejudice may be presumed from the trial court's failure to comply with Rule 431(b) and that, as such, the error requires automatic reversal. The State does not dispute that the trial court failed to question the prospective jurors about this principle, and we agree that the court's failure to do so was error. The State argues, however, that defendant's claim is subject to forfeiture because he did not raise an objection at trial or include the issue in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (failure to raise objection at trial and include the objection in a posttrial motion results in waiver of that issue on appeal). Defendant responds that the rule of forfeiture should be relaxed because "it is the [trial] judge's conduct that is at issue" and that requiring defense counsel to object to the trial court's noncompliance with Rule 431(b) would be inconsistent with the purpose of the amendment to Rule 431(b). Alternatively, defendant argues that his claim should be reviewed for plain error because the trial court's failure to comply with Rule 431(b) deprived him of his "right to a fair trial before a properly selected jury."

Our supreme court recently decided this issue in *People v. Thompson*, No. 109033 (October 21, 2010). In that case, the trial court violated the current version of Rule 431(b) because it did not question the prospective jurors as to whether they understood and accepted that defendant was not required to produce any evidence on his own behalf. Additionally, while the court asked the prospective jurors if they understood the presumption of innocence, the court did not ask whether they accepted that principle.

The court then considered whether a violation of Rule 431(b) was a structural error

requiring automatic reversal. It noted that automatic reversal is required only when an error is deemed "structural," and that the Supreme Court has recognized an error as structural only in a limited class of cases. *Thompson*, slip op. at 7-8, citing *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009). The court also noted its previous observations in *Glasper* that a trial court's failure to comply with the prior version of Rule 431(b) did not involve a fundamental right or a constitutional protection but, rather, involved a violation of the supreme court's rules that was subject to harmless error review. *Thompson*, slip op. at 8, citing *Glasper*, 234 Ill. 2d at 193. The court held that while trial before a biased jury is structural error subject to automatic reversal, the "failure to comply with Rule 431(b) does not necessarily result in a biased jury" or "render a trial fundamentally unfair or unreliable in determining guilt or innocence." *Thompson*, slip op. at 9. It pointed out that there was no evidence that the defendant in that case was tried before a biased jury, that the trial court did address some of the Rule 431(b) requirements in *voir dire*, and that the jury was admonished and instructed on Rule 431(b) principles. *Thompson*, slip. op at 9. Accordingly, the court held that the trial court's violation of Rule 431(b) did not fall within the category of structural errors and thus did not require automatic reversal. *Thompson*, slip op. at 9-10.

The defendant in *Thompson* acknowledged that his claim was forfeited because he did not object to the trial court's failure to comply with Rule 431(b) or include the issue in his posttrial motion. He asked the court to relax the rule of forfeiture because the trial judge's conduct was at issue and because of the impracticality of a party objecting to a trial judge's questions. *Thompson*, slip op. at 10. Referring to this principle as the "*Sprinkle* doctrine," the court noted

that it allowed the failure to preserve an error to be excused "only in extraordinary circumstances," such as "when a judge makes inappropriate remarks to a jury or relies upon social commentary instead of evidence in imposing a death sentence." *Thompson*, slip op. at 10. There was no compelling reason to relax the forfeiture rule in *Thompson*, however, because a "simple objection would have allowed the trial court to correct the error during *voir dire*" and there was "no indication that the trial court would have ignored an objection to the Rule 431(b) questioning." *Thompson*, slip op. at 11.

The defendant also claimed that the trial court's violation of Rule 431(b) was reviewable under the second prong of plain-error review because it infringed on his right to an impartial jury and thus affected the fairness of his trial and challenged the integrity of the judicial process. The court equated the second prong of plain-error review with structural error and recognized that "[a] finding that the defendant was tried by a biased jury would *** satisfy the second prong of plain-error review." *Thompson*, slip op. at 12. The court found, however, that the defendant had failed to meet his burden of establishing that the jury in his case was biased and stated that it could not "presume the jury was biased simply because the trial court erred in conducting the Rule 431(b) questioning." *Thompson*, slip op. at 12. The court then reiterated that the failure to conduct Rule 431(b) questioning does not necessarily result in a biased jury and noted that the prospective jurors received some of the Rule 431(b) questioning and that the venire had been admonished and instructed on Rule 431(b) principles. For these reasons, the court concluded that the second prong of plain-error review did not provide a basis for excusing the defendant's procedural default. *Thompson*, slip op. at 13.

Applying the holding in *Thompson* to the present case, we conclude that the trial court's failure to comply with Rule 431(b) does not require automatic reversal and that defendant's procedural default may not be excused under the plain-error doctrine. There is no dispute in this case that the trial court failed to comply with Rule 431(b) when it did not question the jurors about their understanding and acceptance of the principle that defendant's failure to testify could not be held against him. However, it cannot be assumed that defendant was prejudiced by the error and there is no evidence in the record indicating that defendant's jury was biased against him. See *Thompson*, slip op. at 9. Instead, while the trial court did not question the jurors about defendant's decision not to testify, the record shows that defense counsel questioned all the jurors about their understanding and acceptance of this principle. The trial court also stated the principle in the presence of the venire and instructed the jury on it prior to deliberations. Under these circumstances, we conclude that the trial court's failure to comply with Rule 431(b) was not a structural error requiring automatic reversal.

We also conclude that defendant's procedural default cannot be relaxed in this case. Although defendant claims that forfeiture should be relaxed because it is the "judge's conduct that is at issue," defendant could have raised an objection to the trial court's noncompliance with Rule 431(b) in the trial court, thereby allowing the court to cure the error. There is nothing in the record to suggest that the court would have ignored defendant's request and, to the contrary, we presume the trial court would have corrected its error given the mandatory nature of Rule 431(b). See *Thompson*, slip op. at 10-11.

Finally, we conclude that defendant's procedural default cannot be excused under the

second prong of the plain-error doctrine. The plain-error doctrine bypasses normal forfeiture principles and "allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007), citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). In both instances, the burden of persuasion remains on the defendant. *Herron*, 215 Ill. 2d at 187.

Defendant claims that this issue should be reviewed under the second prong of the plain-error doctrine and that the trial court's error requires reversal because it was of such magnitude that it denied him a trial before a fair and impartial jury. We disagree. We cannot presume that defendant's jury was biased against him solely because of the trial court's error and it is defendant's burden to establish that the error affected the fairness of the defendant's trial and challenged the integrity of the judicial process. See *Thompson*, slip op. at 12. Defendant has failed to meet this burden because he has offered no explanation as to how his jury was biased against him given that defense counsel questioned the prospective jurors about the principle that the trial court omitted, that the trial court stated the principle in the presence of all prospective jurors, and that the court admonished and advised the jury on Rule 431(b) principles prior to its deliberations. Under these circumstances, we cannot say that the trial court's error was so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process.

See *Thompson*, slip op. at 13. Accordingly, the trial court's error does not rise to the level of plain error and we find that defendant has forfeited his claim on appeal.

Defendant's final contention is that the trial court erred by not instructing the jury on the offense of criminal damage to property. The record shows that defense counsel asked the trial court to instruct the jury on the offense of criminal damage to property, which it claimed was a lesser-included offense of arson and aggravated arson. The trial court denied defendant's request, stating that based upon the evidence presented at trial, the jury could not rationally acquit defendant of aggravated arson and find him guilty of criminal damage to property.

Although a defendant generally may not be convicted of an offense for which he has not been charged, in some instances a defendant may be entitled to an instruction on an uncharged lesser-included offense. *People v. Phillips*, 383 Ill. App. 3d 521, 540 (2008). A lesser-included offense is one which "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2006). Courts use a two-step "charging instrument" approach to determine whether the offense is a lesser-included offense and whether the defendant is entitled to an instruction on that offense. *People v. Kolton*, 219 Ill. 2d 353, 360 (2006). First, courts look at the allegations in the charging instrument to determine whether the description of the greater offense contains a "broad foundation" or "main outline" of the lesser offense. *Kolton*, 219 Ill. 2d at 361. However, the identification of a lesser-included offense does not automatically entitle the defendant to have the jury instructed on that offense. *Phillips*, 383 Ill. App. 3d at 540. Once a lesser-included offense is identified, a court must examine the evidence presented at trial

27

to determine whether the evidence rationally supports a conviction for the lesser-included offense. *Kolton*, 219 Ill. 2d at 361; *People v. Medina*, 221 Ill. 2d 394, 405 (2006) (explaining that "[a] defendant is entitled to a lesser-included offense instruction only if the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater").

We initially note that defendant's argument on this issue is confined solely to his conviction for aggravated arson, and therefore any claim with respect to his conviction for arson is waived. See *Bui*, 381 Ill. App. 3d at 421-22. Moreover, the State concedes, and we agree, that under the charging instrument approach, criminal damage to property is a lesser-included offense of aggravated arson. See *People v. Parsons*, 284 Ill. App. 3d at 1058-59. As noted, defendant was charged with committing the offense of aggravated arson "in that he, in the course of committing arson, knowingly damaged partially or totally any building or structure of Gregory Sloane, located at 5354 S. Princeton, in Chicago, Illinois, and [defendant] knew or reasonably should have known that one or more persons were present therein." The criminal damage to property statute provides in relevant part:

"(1) A person commits an illegal act when he:

(a) knowingly damages any property of

another without his consent; or

(b) recklessly by means of fire or explosive

damages property of another; or

(c) knowingly starts a fire on the land of

another without his consent." 720 ILCS 5/21-1(1)

(West 2006).

A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow * * * and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2006).

Having concluded that criminal damage to property is a lesser-included offense of aggravated arson, our next step is to determine whether the evidence presented at trial would rationally permit the jury to acquit the defendant of aggravated arson and to find him guilty of criminal damage to property. Defendant claims that the jury could have rationally concluded that he did not knowingly set fire to the building located at 5354 South Princeton and therefore acquitted him of aggravated arson and instead found that his actions were reckless and therefore convicted him of criminal damage to property. Defendant relies upon *People v. Bradley*, 256 Ill. App. 3d 514 (1993), to support his contention.

In *Bradley*, the defendant was charged with aggravated arson based on evidence that she set fire to her boyfriend's mattress. The defendant initially indicated that she had been smoking and may have dropped a cigarette and ignited the mattress. Under further questioning, however, the defendant admitted that she deliberately set her boyfriend's mattress on fire with her cigarette lighter because she was angry with him. On appeal, the defendant challenged her aggravated arson conviction and claimed that the trial court erred by not instructing the jury on the lesser-included offense of criminal damage to property. *Bradley*, 256 Ill. App. 3d at 515-16. The

appellate court agreed and held:

> "In the present case, defendant initially offered *** an
> explanation of how the fire might have been caused. She stated that
> she may have dropped and not retrieved a lighted cigarette during a
> struggle with [her boyfriend]. This statement, although
> subsequently recanted by defendant, could have supported a
> determination by the jury that defendant acted recklessly rather than
> knowingly and deliberately. Defendant's initial statement as to the
> cause of the fire entitled her to an instruction on criminal damage to
> property. We hold that the trial court erred in finding that there
> was no evidence of recklessness and in refusing to give the
> instruction on criminal damage to property." *Bradley*, 256 Ill. App.
> 3d at 516.

The State, on the other hand, claims that the present case is similar to *Phillips*, 383 Ill.
App. 3d at 531-32, in which the defendant was convicted of aggravated arson on evidence
showing that he ignited a piece of cardboard in a garbage can that he placed near the residence.
In a videotaped statement, the defendant told the police that he placed the garbage can three feet
away from the residence because it was less windy in that location and because he believed "'it
wouldn't catch anything'" on fire. *Phillips*, 383 Ill. App. 3d at 532. He also claimed in the
statement that he did not intend to set the residence on fire and that the resulting fire to the
residence was an accident. *Phillips*, 383 Ill. App. 3d at 532. On appeal, the defendant argued

that his counsel was ineffective for failing to request an instruction on the offense of criminal damage to property, arguing that there was evidence indicating that his actions were reckless and that he was therefore entitled to the instruction. *Phillips*, 383 Ill. App. 3d at 543. The appellate court disagreed, noting that unlike the defendant in *Bradley*, whose statement that she accidentally dropped a lit cigarette evidenced a lack of intentional and deliberate conduct, the defendant's actions in that case indicated that he started the fire knowingly and deliberately, thus "negating any contention that the fire was caused by mere recklessness." *Phillips*, 383 Ill. App. 3d at 543. The court further noted that in all of the accounts of the fire defendant provided, he consistently admitted to deliberately starting the fire in the garbage can, which he positioned close to the residence. *Phillips*, 383 Ill. App. 3d at 543. The court also noted that the State presented evidence that defendant actually started the fire by igniting gasoline on the rear wall of the residence, which was clearly a deliberate and knowing act. The court concluded that even if the jury believed the defendant's confession about igniting the fire in the trash can, there was no basis upon which it could have rationally acquitted him of aggravated arson and convicted him of criminal damage to property because there was no evidence that defendant acted recklessly when he admitted to deliberately starting the fire. *Phillips*, 383 Ill. App. 3d at 543-44.

We agree with the State and find that, similar to the defendant's actions in *Phillips*, all of defendant's actions in this case evidence deliberate and knowing conduct. There is no dispute that defendant deliberately set fire to the building located at 5405 South Shields by igniting gasoline on that building's second-floor landing on a night that was described as "very windy." As discussed above, by doing so defendant knowingly set fire to the building located at 5354

South Princeton. There was no evidence presented indicating that the fire accidentally spread to that building, and the fire marshal testified that given the wind conditions on the night of the fire, it was "absolutely" "a possibility" that the initial fire spread to the secondary structure. Unlike the facts in *Bradley*, there is no evidence in the present case that defendant accidentally caused the fire or that his actions were anything but deliberate and knowing. Accordingly, we find that there was no basis upon which the jury could have rationally acquitted him of aggravated arson but found him guilty of criminal damage to property. Therefore, defendant was not entitled to an instruction on the lesser-included offense.

Moreover, even if defendant was entitled to an instruction on the lesser-included offense of criminal damage to property, the failure to give such an instruction did not prejudice defendant in light of the overwhelming evidence regarding the greater offense of aggravated arson. See *Parsons*, 284 Ill. App. 3d at 1060-61 (finding that the evidence supporting the defendant's conviction for the greater offense of aggravated arson was so strong that the defendant was not prejudiced by any failure to instruct the jury on the lesser-included offense of criminal damage to property); *People v. McClellan*, 232 Ill. App. 3d 990 (1992) (failure to instruct jury on lesser offense requires reversal only if the defendant was so prejudiced by such failure so as to affect the outcome of the verdict).

In this case, defendant was observed standing on the rear porch of 5405 South Shields wearing latex gloves and holding a red gasoline can. Defendant fled from the police when he saw them and discarded the gasoline can and the shirt he was wearing while being pursued. After defendant fled, the police observed that there was a "huge" fire at 5405 South Shields and that the

back porch where defendant had been standing was "up in flames." The police testified that defendant smelled of gasoline when he was taken into custody and that the shirt defendant discarded as well as the contents of the red gasoline can also smelled of gasoline. The house where defendant started the fire, 5405 South Shields, was located in a residential area made up of vacant lots, abandoned structures, and buildings in which people lived. Officer Murphy described the weather at the time defendant ignited the fire as "very windy" and she testified that the wind was blowing strongly to the north. The record reveals that the building located at 5354 South Princeton, a multifamily dwelling, is almost directly to the north of 5405 South Shields. The two buildings are less than one city block apart and the area between the two is comprised primarily of vacant lots. Embers from the fire at 5405 South Shields were blown across the alley and ultimately set fire to the roof of 5354 South Princeton. The arson investigator concluded that the fire at 5405 South Shields was caused by the "open ignition of the flammable liquid vapors of an ignitable liquid" on the building's second floor and he testified that the fire "flew across" the alley and ignited a hole in the roof of the building at 5354 South Princeton. In light of this overwhelming evidence of defendant's guilt, we conclude that defendant suffered no prejudice from the trial court's decision not to instruct the jury on the lesser-included offense of criminal damage to property.

For the foregoing reasons, we vacate defendant's conviction and sentence for arson. The judgment of the circuit court of Cook County is affirmed in all other respects.

Affirmed in part and vacated in part.

CAHILL, J., concurs.

33

1-08-3092

PRESIDING JUSTICE GARCIA, specially concurring:

I agree with the majority that there is "no basis upon which the jury could have rationally acquitted [the defendant] of aggravated arson but found him guilty of criminal damage to property." Slip op. at 32. I do not agree, however, that to arrive at that conclusion we need to engage in a lesser-included offense analysis. Specifically, I disagree with the majority's statement, aided by the State's concession, that criminal damage to property is a lesser included offense of aggravated arson under the facts of this case. Slip op. at 28.

The two offenses, criminal damage to property and aggravated arson, are separated by the intermediate (so to speak) offense of arson, with which the defendant was also charged. The defendant nonetheless insists that his lesser-included contention does not apply to the charged offense of arson. Little wonder, as demonstrated by the majority, the evidence is overwhelming that the defendant purposely set fire to an abandoned building. The defendant's contention before us appears to be that the trier of fact could have found his purposeful acts as to one building to be merely reckless as to the occupied building to which the fire spread.

There is no authority that supports the defendant's claim that his purposeful state of mind in starting a fire by pouring gasoline on the back porch of an abandoned building can change to a reckless state of mind based on strong winds blowing at the time. Only one fire was set; that fire was set purposely. I am not persuaded that under the facts of this case criminal damage to property is a lesser-included offense of aggravated arson. See People v. Miller, No. 107878 (September 23, 2010) ("lesser-included offense [is] an offense established by proof of lesser facts *** than the charged offense"), citing 720 ILCS 5/2-09 (West 2004). The claimed lesser "facts"

34

in this case, that the defendant acted only recklessly in setting a fire that spread to an occupied building or that he should not be saddled with knowing the building was occupied, could not be found to be "facts" by the jury.