2020 IL App (1st) 172189-U

No. 1-17-2189

Order filed May 13, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 10481 |
| | ) | |
| KRYSTINA STOCH, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Ellis and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for aggravated battery is affirmed over her contention that the State failed to prove her guilty beyond a reasonable doubt. Pursuant to Illinois Supreme Court Rule 472(e), we remand to the circuit court so defendant may raise her contention that her mittimus should be corrected to reflect the correct offense.

¶ 2    Following a jury trial, defendant Krystina Stoch was convicted of aggravated battery and sentenced to two years' imprisonment.[1] On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that she knowingly caused bodily harm to the victim, and that her mittimus should be corrected to reflect the correct offense. We affirm defendant's conviction and remand to the circuit court to allow her to file a motion to correct her mittimus.

¶ 3    Defendant was charged by indictment with two counts of aggravated battery to an emergency medical technician (EMT) while performing his official duties. 720 ILCS 5/12-3.05(d)(5)(i) (West Supp. 2015). Count I alleged defendant knowingly caused bodily harm to Todd Williams in that she struck him about the face and body, and knew him to be an EMT performing his official duties. Count II alleged defendant knowingly caused bodily harm to Dale Tokarz in that she pushed him about the body, causing him to fall and injure his knee, and knew him to be an EMT performing his official duties.

¶ 4    Williams testified that on June 19, 2016, he was a licensed EMT and paramedic employed by the Chicago Fire Department. At approximately 5:10 a.m., Williams and Tokarz responded to a call of an "injured victim" at the Eighth District police station. Williams wore "[u]niform pants, shoes, boots, and a T-shirt" with "Chicago Fire Department" written on it. Williams and Tokarz arrived in an ambulance and met two police officers with defendant, who was handcuffed. When Williams first observed defendant she was "agitated," "angry and loud," and using profanity. Williams informed defendant that he and Tokarz would transport her to the hospital. Defendant told Williams that she had "wrist or hand injuries," and that her wrists were "sore." Williams and Tokarz put defendant on a stretcher and secured her with seat belts. Chicago police officer Branch

---

[1] Defendant's name also appears as Krystyna Stoch throughout the record. We adopt the spelling from the notice of appeal.

handcuffed defendant to the side wheels of the stretcher.[2] Defendant was placed in the back of the ambulance with Williams and Branch, while Tokarz drove. During the ride to Holy Cross Hospital, defendant was "angry, agitated, [and] swearing," and mentioned that the handcuffs bothered her wrists.

¶ 5     When Williams and Tokarz wheeled defendant into the emergency room, Williams told the triage nurse that defendant was complaining that her wrists were sore. The nurse instructed Williams to place defendant into a wheelchair. Williams was at the foot of the stretcher and Tokarz was on the left side of defendant, towards her head. Branch removed the handcuff from one wrist, and as Williams and Tokarz tried to move defendant into the wheelchair, she "got violent and started kicking and flailing." Defendant became "increasingly agitated," and "started to flail and fight and swing." As Williams tried to avoid the handcuff, which defendant was swinging in her free hand, she kicked him "a couple times in [the] neck and head." Williams testified the kicks "stunned [him] pretty good." Defendant continued to fight as Williams, Tokarz, and a hospital security guard tried to calm her. Williams tried to keep defendant from kicking, but the stretcher flipped over and Williams, Tokarz, Branch, and defendant "ended up on the floor in a big pile." Defendant continued to kick and fight while on the ground. Williams placed defendant under control and put her in an emergency room bed.

¶ 6     The State published a video that Williams identified as a recording of the events in the emergency room.[3] Due to the incident, Williams suffered a bruise and contusion to his neck and head, which felt sore, and he "got dazed pretty well."

---

[2] Officer Branch's first name was not given at trial.
[3] The record on appeal includes a CD purporting to contain the video published at trial, but this court was unable to access the file and could not view the footage.

¶ 7 On cross-examination, Williams testified that he grabbed defendant's left wrist as he attempted to place her in the wheelchair. Williams did not notice if defendant had any deformities to her knuckles or was holding her hands in an unusually stiff way. Williams's shift ended at 6:30 a.m. that day, but he worked past that time doing reports and paperwork. Williams did not seek medical treatment, but "may have taken Tylenol or Aleve." On redirect, he identified a large bruise to his neck in a photograph of his injuries.

¶ 8 Tokarz testified that on June 19, 2016, he was an EMT and licensed paramedic. That day, Tokarz wore uniform pants and a T-shirt identifying him as an employee of the Chicago Fire Department, and drove the ambulance to the Eighth District police station. There, he observed police officers bringing defendant in handcuffs toward the ambulance. Tokarz testified that defendant was "uncooperative, [and] unruly." Tokarz was unable to examine defendant because she was "very combative, [and] verbally abusive" toward Tokarz and Williams. Defendant was placed in the ambulance and handcuffed to the stretcher.

¶ 9 Tokarz drove five to seven minutes to Holy Cross Hospital. Defendant became "abusive" toward Tokarz and Williams when they took her from the ambulance to the emergency room. Tokarz and Williams attempted to transfer defendant from the ambulance gurney to a wheelchair. A police officer removed one of defendant's handcuffs and defendant kicked Williams. Tokarz tried to grab defendant's leg to put her into the wheelchair, but lost his balance and fell to the floor. Williams, the police officer, and defendant fell on top of Tokarz. Tokarz stood up but had "severe pain" in his knee. Tokarz tried to "walk it off," but returned to the emergency room. He was examined by an emergency room doctor and x-rays of his knee were taken. Tokarz identified a portion of the video from the hospital that depicted him limping from the emergency room. Tokarz

also identified photographs of his knee that were taken approximately 1½ hours after the incident, a photo of his knee after it was wrapped by the emergency room staff, and a photo depicting bruising around the kneecap.

¶ 10      On cross-examination, Tokarz testified he knew defendant had a problem with her wrist. At the hospital, Tokarz grabbed defendant's left arm and placed it behind defendant's back so the officer could handcuff her. The police officer had defendant's right arm and was moving the arm behind defendant. Defendant was screaming the entire time and looked "very upset." Tokarz did not know defendant's medical history regarding her wrist pain, or whether she suffered from any debilitating conditions. On redirect examination, Tokarz testified defendant was "[v]ery strong."

¶ 11      Defendant testified that on June 19, 2016, she was suffering from an injury that prevented the fingers on her left hand from straightening. Defendant also had an injury to her shoulders that limited her movement, and moving her hands was "extremely" painful due to a "nerve break or something." Defendant testified it was "[v]ery painful" when Tokarz grabbed her left hand at the hospital. Later, defendant was taken to jail and she noticed she was bleeding and had blood on her blouse. Defendant identified photographs taken at the jail that depicted her hands, bruises and swelling to both her knees, swelling and bruises to her ankle, and bruises to her back. Defendant testified she did not intend to cause bodily injury to the paramedics.

¶ 12      On cross-examination, defendant testified she did not remember exactly where she met the paramedics. Defendant saw herself kicking Williams on the video after her hands were bent back and testified, "[i]f they bent your hands in the back if you have it broken, you'd be kicking too, really. You don't want to kick nobody but it's the pain." Defendant testified the paramedics were

trying to handcuff her and "[n]obody was asking what happened, if it hurt." Defendant testified the photos of her injuries were taken on June 21, 2016.

¶ 13    Following closing arguments, the jury found defendant guilty of aggravated battery of Williams (count I) and not guilty of aggravated battery of Tokarz (count II). Defendant's motion for new trial was denied. Following a hearing, the court sentenced defendant to two years' imprisonment.

¶ 14    On appeal, defendant first contends that the evidence was insufficient to find her guilty of aggravated battery because the State did not prove beyond a reasonable doubt that she knowingly caused bodily harm to Williams.

¶ 15    Defendant argues that a *de novo* standard of review is applicable because she is not questioning the credibility of the witnesses, but rather, whether the uncontested facts were sufficient to convict. The State argues, and we agree, that the appropriate standard of review is whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt.

¶ 16    Essentially, defendant contends that she did not knowingly kick Williams but only responded to the pain in her wrists. Hence, defendant challenges the inferences the trier of fact drew from the evidence regarding her mental state, "which presents disputed questions of fact." *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 36 (citing *People v. Stewart*, 406 Ill. App. 3d 518, 525 (2010) (no *de novo* review where defendant challenged "inferences that can be drawn from the evidence" by claiming evidence failed to establish he acted "knowingly")). Thus, we decline to apply *de novo* review.

¶ 17    The standard of review on a challenge to the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). This standard is applicable in all criminal cases whether the evidence is direct or circumstantial. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). The trier of fact is responsible for assessing the credibility of the witnesses, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). When considering the sufficiency of the evidence, it is not the reviewing court's duty to retry the defendant. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). A reviewing court will only reverse a criminal conviction when the evidence is so improbable or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *Id*.

¶ 18    In this case, defendant was found guilty of aggravated battery of a Chicago Fire Department EMT/paramedic. In order to sustain defendant's conviction, the State was required to prove beyond a reasonable doubt both the commission of a battery and the presence of an additional aggravating factor. *People v. Cherry*, 2016 IL 118728, ¶ 16. "A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (West 2016). To elevate the battery to aggravated battery, the State must prove defendant knew Williams was an EMT performing his official duties. 720 ILCS 5/12-3.05(d)(5)(i) (West Supp. 2015).

¶ 19    Defendant does not dispute Williams was an EMT performing his official duties or that she made physical contact that caused bodily harm. Instead, defendant only challenges the State's evidence that she knowingly caused bodily harm to Williams.

¶ 20 A person acts knowingly if she "is consciously aware that the result is practically certain to be caused by his or her conduct." 720 ILCS 5/4-5(b) (West 2016); *People v. Steele*, 2014 IL App (1st) 121452, ¶ 23. A person acts recklessly if she "consciously disregards a substantial and unjustifiable risk that *** a result will follow." 720 ILCS 5/4-6 (West 2016); *Lattimore*, 2011 IL App (1st) 093238, ¶ 43. "Recklessness is a less-culpable mental state than knowledge, and evidence of recklessness is insufficient to prove that a person acted knowingly." (Internal quotation marks omitted.) *Lattimore*, 2011 IL App (1st) 093238, ¶ 43. "Whether a person acted knowingly with respect to bodily harm resulting from one's actions is, due to its very nature, often proved by circumstantial evidence, rather than direct proof." *People v. Hall*, 273 Ill. App. 3d 838, 842 (1995). The " '[d]etermination of defendant's mental state may be inferred from circumstantial evidence, and this task is particularly suited to the jury.' " *People v. Garcia*, 407 Ill. App. 3d 195, 201 (2011) (quoting *People v. Moore*, 358 Ill. App. 3d 683, 688 (2005)).

¶ 21 Viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have concluded that defendant knowingly caused bodily harm to Williams. The record shows that Williams and his partner transported defendant, who complained of a wrist injury, from the police station to the hospital. Before defendant was placed in the ambulance, Williams noted defendant was "angry, agitated, and swearing." Tokarz was unable to examine defendant prior to transporting her to the hospital because she was "very combative, [and] verbally abusive" toward the paramedics. At the hospital, Branch removed the handcuff from one of defendant's wrists as the paramedics attempted to lift her from the gurney to a wheelchair. Defendant became combative, flailed her arms, and fought with the paramedics. As the paramedics tried to place defendant into the wheelchair, she kicked Williams in the neck with enough force to

stun him "pretty good." Williams sustained bruises to his neck from defendant's kick. Tokarz corroborated Williams's testimony. The State presented video and photographic evidence of the injury and bruising to Williams. Defendant admitted kicking Williams, but claimed she was responding to pain in her wrists.

¶ 22     Given this evidence, a rational trier of fact could find defendant acted knowingly, *i.e.*, was consciously aware her conduct was certain to cause bodily harm to Williams. Stated differently, the evidence presented was not so improbable, unsatisfactory, or inconclusive to justify a reasonable doubt as to defendant's guilt. *Beauchamp*, 241 Ill. 2d at 8.

¶ 23     In reaching this conclusion, we are not persuaded by defendant's argument that she did not intend to hurt Williams, but only kicked him in reaction to the pain she felt in her wrists when she was suspended in midair by her arms. Defendant essentially asks us to reweigh the evidence in her favor and substitute our judgment for that of the trier of fact. This we cannot do. It was the responsibility of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony, and to resolve any inconsistencies and conflicts in the evidence. See *Ortiz*, 196 Ill. 2d at 259. Given its verdict, the jury found Williams and Tokarz credible and resolved the inconsistencies in the evidence in favor of the State. The jury was "not required to disregard inferences that flow normally from the evidence before it," or to "search out all possible explanations consistent with innocence and raise those explanations to a level of reasonable doubt." *People v. Eubanks*, 2019 IL 123525, ¶ 95.

¶ 24     Nor are we persuaded that defendant's actions in kicking Williams were reckless. Williams and Tokarz arrived at the police station to transport defendant to the hospital after she complained of wrist pain. Tokarz was unable to examine defendant because she was "very combative, [and]

verbally abusive" toward the paramedics. Once they arrived at the hospital, defendant lashed out at the paramedics, "kicking and flailing" as they tried to move her to the wheelchair. Defendant kicked Williams in the head and neck, causing bodily harm. Defendant argues that her act of kicking Williams was reckless and a response to pain in her wrists. However, the testimony of Williams and Tokarz supports the jury's finding that defendant knowingly caused bodily harm to Williams. That is, the jury could rationally find that defendant tried to prevent the paramedics from putting her into the wheelchair and kicked Williams in the head and neck because her hands were restrained. As mentioned, a conviction will be overturned only if the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of guilt. *Beauchamp*, 241 Ill. 2d at 8. This is not one of those cases.

¶ 25    Next, defendant argues for the first time on appeal that her mittimus should be amended to reflect the correct offense of aggravated battery to an EMT, and not aggravated battery of a "JUDGE/EMT." The State argues, and defendant concedes in her reply brief, that this issue should be remanded to the circuit court.

¶ 26    On February 26, 2019, while this appeal was pending, our supreme court adopted new Illinois Supreme Court Rule 472, which sets forth the procedure in criminal cases for correcting sentencing errors in, as relevant here, "clerical errors in the written sentencing order or other part of the record resulting in a discrepancy between the record and the actual judgment of the court." Ill. S. Ct. R. 472(a)(4) (eff. May 17, 2019). On May 17, 2019, Rule 472 was amended to provide that "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion

pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). "No appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule unless that alleged error "has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. May 17, 2019). Therefore, pursuant to Rule 472, we "remand to the circuit court to allow [defendant] to file a motion pursuant to this rule," raising the alleged clerical errors in the mittimus. Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 27    Affirmed; remanded as to mittimus.